RAYMOND HENDERSON *v.* STATE OF INDIANA.

[No. 671S184. Filed August 25, 1972.]

*William L. McClellan,* of Greencastle, for appellant.

*Theodore L. Sendak,* Attorney General, *William D. Bucher,* Deputy Attorney General, for appellee.

GIVAN, J.—The appellant was committed to the Indiana State Farm on June 26, 1970, with a release date of November

21, 1970, with allowance for good behavior, with the maximum release date of January 31, 1971.

On July 30, 1970, the appellant disappeared from his work detail at the Farm. On August 16, 1970, he was arrested in Rushville, Indiana, as an escapee. He was charged by affidavit with the crime of escape from the Indiana State Farm, to which charge he entered a plea of not guilty. A jury trial resulted in a verdict of guilty. The court sentenced the appellant to the Indiana State Prison for a period of not less than one nor more than five years.

Appellant attempted to defend the charge of escape, first by showing that not only during his immediate past incarceration at the Farm, but on four previous occasions while incarcerated, he had been a model prisoner and had been permitted to drive State Farm trucks throughout the State of Indiana making deliveries to the other state institutions, and that he had a pass which permitted him to go about the State Farm without the accompaniment of an officer.

Appellant took the witness stand in his own behalf and testified that on the day of his alleged escape he was suffering from a severe headache, and that he took two capsules he described as being blue on one end and white on the other, with a gold band. These capsules were obtained from another inmate and taken by the appellant for his headache. Later in the day after taking the capsules, the appellant stated that he found himself in a wood area near Interstate Highway 70 between Putnamville and Indianapolis; that he had no recollection of what had occurred from shortly after taking the capsules until awaking and finding himself in the wooded area. He stated that he walked to Road 70 where he hitchhiked a ride to Indianapolis Airport. From there he walked to the home of his brother in Indianapolis where he stayed three or four days.

Approximately a week after leaving the Farm, he hitchhiked to Rushville, Indiana, where he went to the home of

Rev. Charles Wooley, Pastor of the Rushville Church of Christ. He advised Rev. Wooley that he was absent without leave from the State Farm, and that he wished counsel on that problem as well as problems he was having with his wife and children.

Appellant further testified that Rev. Wooley obtained the services of an attorney, one James Kelly, who also counseled with the appellant.

Appellant testified that he was seeking this counseling from Rev. Wooley and Mr. Kelly in order to determine the best way to have himself returned to the State Farm with the least consequences to himself for his actions.

On cross-examination of the appellant the State brought out further facts that subsequent to appellant's first conversation with Rev. Wooley, he had obtained an automobile from Callahan Ford in Indianapolis by giving a fraudulent check. He drove this car to the rural home of his former wife near Rushville, Indiana, and parked it in a cornfield near her home because "I didn't want to be seen there by the law."

Appellant further testified that he did not have any trouble with his wife during the visit, and that he did not see any police officers while he was there.

In rebuttal the State called as witnesses both the appellant's former wife and his daughter, who was at home during appellant's visit. Both the former wife and daughter testified that the appellant came to their trailer home; that he caused trouble, including striking his former wife and his daughter; that the daughter went next door and called the sheriff; that the appellant was still in the trailer at the time the sheriff arrived. When appellant saw the sheriff drive into the driveway, he left by the back door of the trailer and escaped through a cornfield. It was shortly after this episode that appellant was apprehended and returned to the State Farm.

It is appellant's contention that the court erred in allowing the State's rebuttal witness, Sharon Henderson, the former

wife of the appellant, to testify concerning the struggle above described. It is appellant's position that this was evidence of a collateral matter which was in no way connected with the escape for which appellant was being prosecuted, and that the admission of such evidence is reversible error under the authority of *Hensley* v. *State* (1971), 256 Ind. 258, 268 N. E. 2d 90, 25 Ind. Dec. 220. However, there is a marked difference between the facts of the *Hensley* case and the facts of the case at bar. In *Hensley* the appellant was on trial for an attack on a young woman. The State introduced evidence of a previous attack on another woman, which attack was in no way connected with the crime charged, and was not introduced in an attempt to show a scheme or plan, but solely for the purpose of discrediting the appellant as a witness. In the case at bar the appellant had injected the defense of an involuntary leaving of the State Farm while in a condition of "blackout" induced by a drug. His direct testimony was obviously calculated to convince the jury that he was shocked and alarmed on finding himself away from the Farm without leave, and that his main purpose was to attempt to get back to the State Farm in the best possible manner. He had conveniently omitted the fact that he had improperly obtained an automobile during the period of escape, and that he had driven to his former wife's home where he had caused trouble. In view of the appellant's direct testimony, the State was well within its right to introduce rebuttal testimony to show that appellant did in fact have other things than returning to the State Farm on his mind during the two week period he was at large, and that his protestations of only wanting to do the right thing were placed in doubt by the fact that he had pursued a course of unlawful behavior during this period of escape. We do not perceive the facts elicited by the State on cross-examination of the appellant and the rebuttal testimony of his wife and daughter as being collateral to the issue of his escape. Those facts were properly submitted for the consideration of the jury in view of the de-

fense presented by the appellant. *Baker* v. *State* (1967), 249 Ind. 117, 231 N. E. 2d 21, 12 Ind. Dec. 4.

Appellant next claims the trial court erred in the exclusion of the conversation between the appellant, Rev. Wooley and the attorney, James Kelly. An examination of the record discloses the trial court permitted the appellant to testify concerning his conversation with Rev. Wooley because Rev. Wooley was in the court room and did in fact testify himself. However, the court excluded any evidence as to any statements made by Mr. Kelly to the appellant on the ground that Mr. Kelly was not in court and available for cross-examination and further that there was no showing that Mr. Kelly was unavailable. An offer to prove was made to the effect that the appellant would testify that Mr. Kelly told him that he should return to the State Farm, but that he should remain at large and allow Mr. Kelly to contact the authorities at the State Farm and to make arrangements for his return. We hold the trial court was correct in excluding such testimony. In 31A C.J.S., *Evidence*, § 193 (b) it is stated:

> "The rule excluding hearsay is a basic, rather than a technical, rule. The reason for the rule is that the unsworn statements of a person not called as a witness or subjected to the test of cross-examination is not recognized as having a sufficient probative effect to raise an inference that the fact is as stated; and the rule is particularly applicable when such a person can be summoned and sworn as a witness. The right of a party to test by cross-examination the veracity and accuracy of the person making the statement offered in evidence has been said to be the principal reason for the hearsay rule; the reason for the exclusion is that the test of cross-examination of the person making the statements out of court, at the time they are made, is unavailable as a guard against falsification or inaccuracy."

We would further observe that although the trial court did exclude testimony by the appellant as to the specific statements made to him by Mr. Kelly, there was further testimony by both the appellant and Rev. Wooley that he did in fact counsel with Mr. Kelly for the purpose of deter-

mining how best to return himself to the State Farm, and that Mr. Kelly advised him in this regard; that following this advice Mr. Kelly was going to contact the authorities and that appellant remained at large. Thus we find that although the exact statements of Mr. Kelly were correctly excluded from the evidence, the jury was certainly informed, at least as to appellant's version of the outcome of his consultation with Mr. Kelly. Thus, even if we would assume for the sake of argument that the evidence had been improperly excluded, such exclusion would not be reversible error for the reason that the same facts were placed in evidence by other testimony. *Smith* v. *State* (1969), 250 Ind. 125, 235 N. E. 2d 177, 13 Ind. Dec. 560. We find no error in the record of this case.

The trial court is, therefore, affirmed.

Arterburn, C.J., and Hunter and Prentice, JJ., concur; DeBruler, J., concurs in result with opinion.

OPINION CONCURRING IN RESULT

DEBRULER, J.—In my view, the trial court committed error in refusing to permit the appellant to testify as to what Mr. Kelly advised him about returning to the State Farm. The purpose of this evidence was to show the state of mind of the appellant and to support his defense that he did not intentionally flee the State Farm but did so unintentionally under the influence of drugs, and to further explain his reasons for not deciding at that point to immediately surrender himself to the police.

The statements were not offered as proof of the truth of the assertions they contained, and they therefore were not hearsay, and should not have been excluded as hearsay. *Harvey* v. *State* (1971), 256 Ind. 473, 269 N. E. 2d 759; *Wells* v. *State* (1970), 255 Ind. 608, 261 N. E. 2d 865; *Indianapolis Newspapers, Inc.* v. *Fields* (1970), 255 Ind. 219, 259 N. E. 2d 651. I concur with the majority that exclusion of this evidence was harmless error and should not result in a reversal of this

conviction in light of the subsequent testimony of the witness Wooley at the trial which described the consultation of the appellant with Mr. Kelly.

NOTE.—Reported in 286 N. E. 2d 398.