JAMES LOUIS JACKSON A/K/A JESSE JACKSON *v.*
STATE OF INDIANA.

[No. 1275S367.  Filed September 21, 1977.  Rehearing denied
November 28, 1977.]

*Max Cohen,* of Gary, for appellant.

*Theodore L. Sendak,* Attorney General, *Gerald M. Arthur,*
Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Jackson was convicted of second-
degree murder on June 19, 1975, in Lake Criminal Court, and
sentenced to a term of fifteen to twenty-five years.  The case
arises from the shooting of William Neubauer, Jackson's

foreman at Youngstown Sheet and Tube Company in East Chicago on November 12, 1974. Jackson was assigned to work on a blast furnace, and in the course of operating a skimmer gate on the furnace some molten iron spilled onto the ground. Levi Abercrombie, another worker who was nearby, heard Neubauer tell Jackson not to raise the gate until he was told to. Abercrombie then overheard a verbal altercation between Jackson and Neubauer, and two shots. Abercrombie went over toward Neubauer, who fell into his arms after a third shot was fired. Abercrombie saw no weapons on Neubauer's person. At this time Jackson came over with a gun still pointed at Neubauer, and Abercrombie said, "No James, don't shoot him no more. You already done killed the man already." Jackson told Abercrombie to throw Neubauer in the ladle. Abercrombie refused, and the decedent was removed from the plant on stretchers.

Two issues are raised in this appeal: (1) whether the trial court erred in failing to admonish the jury sufficiently concerning references by two police officers to an inadmissible confession, and; (2) whether the court erred in permitting questioning concerning prior specific acts of misconduct at work.

## I.

Appellant's first alleged error concerns an inculpatory statement he gave to the East Chicago police, in which he admitted shooting the decedent. A suppression hearing was held out of the presence of the jury during the first day of trial, at which appellant's motion to suppress the statement was denied. After the jury returned, the prosecution began establishing foundation testimony for the statement's admission. Chief Arrendondo and Officer Edwards of the East Chicago police testified about the circumstances surrounding the taking of the statement. During cross-examination of Chief Arrendondo by the defense, the witness was specifically asked what appellant told him during police questioning. Arrendondo replied

that appellant admitted taking the gun and shooting decedent, because he thought decedent was about to do him bodily harm. During questioning by the prosecution, Officer Edwards stated that appellant admitted the shooting to him. Appellant made no objection to Edwards' reference to the confession.

Because of irregularities surrounding appellant's waiver of his rights, the trial court reversed its earlier ruling and suppressed appellant's confession. The jury was then admonished to disregard any references by Chief Arrendondo to conversations between himself and appellant and said testimony was ordered stricken. The gist of appellant's claim is that the court's admonishment was insufficient to cure the prejudice caused by the references by the two officers to the inadmissible statement.

The case of *Dillard* v. *State*, (1971) 257 Ind. 282, 298, 274 N.E.2d 387, 395, noted three factors to be examined in determining the impact of federal constitutional error on the jury: the nature of the inadmissible evidence, whether the evidential harpoon was the result of calculated action by the prosecution, and the nature of the rest of the evidence in the case. The nature of the inadmissible evidence here is reference by police officers to an inadmissible confession. At least in the case of Chief Arrendondo's references, however, such references were arguably favorable to appellant; they could have bolstered appellant's theory, presented at trial, that the killing was in self-defense. Further, Chief Arrendondo's references were not the result of an evidential harpoon calculated by the prosecution, but were rather elicited by defense counsel. Neither was Officer Edwards' statement a calculated evidential harpoon: Edwards had simply been asked what he did after the discussion with appellant in the Chief's office and responded by referring to appellant's inculpatory statement, without defense objection.

Looking at the nature of the other evidence in the case, we note the testimony of Levi Abercrombie. While Aber-

crombie did not actually see appellant shoot the decedent, he overheard the altercation between the two which led up to the shooting. Then, Abercrombie saw appellant approach the victim with the gun still in hand, and was told by appellant to dispose of the victim's body. Thus, under the standard of *Dillard*, we find that any possible federal constitutional error here would have been harmless, and hold that beyond a reasonable doubt it did not contribute to the verdict.

## II.

The second alleged error concerns the trial court's permission of questioning about appellant's prior specific acts of misconduct at work. During appellant's case in chief, he called two witnesses who testified that appellant had a good reputation at work in the mill and was a hard worker who never did anything but his job. Defense witnesses also testified that decedent Neubauer had a short temper and a bad reputation for peacefulness at the mill. Appellant himself testified that he had never been in trouble before, aside from the incident in question, and that he carried the pistol with which he shot decedent mainly to protect himself. The prosecutor then cross-examined appellant about whether he had, on two earlier occasions, threatened two other foremen at the mill. Appellant denied having made these threats. The state then called a rebuttal witness, who testified about a prior verbal altercation between appellant and a mill foreman wherein appellant said, "that if he lost any time over this he would get even with them, that it would be awful easy for them to disappear into an iron ladle."

Appellant's claim is that both the cross-examination of him and the presentation of rebuttal evidence about prior misconduct was questioning about a "collateral issue." This is said to be error under the rule of *Hensley* v. *State*, (1971) 256 Ind. 258, 261, 268 N.E.2d 90, 92, where it was stated that, "the state is not permitted to inquire into specific acts of misconduct other than prior convictions."

The *Hensley* rule on the impermissibility of questioning about prior misconduct, other than convictions, applies if such evidence is in no way connected with the crime charged and is not introduced in an attempt to show a scheme or plan, but solely for the purpose of discrediting the appellant as a witness. *Henderson* v. *State*, (1972) 259 Ind. 248, 251, 286 N.E.2d 398, 400. *Hensley* overruled the statement in *Wells* v. *State*, (1959) 239 Ind. 415, 158 N.E.2d 256, that a defendant who has taken the stand may be examined as to specific acts of unlawful *conduct or convictions:* such defendants may now be examined only as to prior convictions. *Hensley*, 256 Ind. at 262, 268 N.E.2d at 92-93.

The *Hensley* rule, however, is subject to at least two exceptions which apply to the situation in the present case. First, once a defendant has put his reputation for character into evidence, the prosecutor may offer evidence as to his bad character, which evidence may include specific acts of prior misconduct. *Robertson* v. *State*, (1974) 262 Ind. 562, 319 N.E.2d 833; *Jordan* v. *State*, (1953) 232 Ind. 265, 110 N.E.2d 751. Appellant clearly put his reputation for peacefulness at the mill into question here, both by his own testimony and that of his witnesses. Second, when defendant attempts to prove a factual defense which justifies his actions, specific acts of prior conduct are admissible to rebut the defense. *Henderson* v. *State*, (1972) 259 Ind. 248, 286 N.E.2d 398. *Henderson* was a prosecution for escape from the Indiana State Farm, where defendant tried to show that he had involuntarily left the farm while in a condition of "blackout" induced by a drug. Evidence that defendant went to the trailer home of his former wife and daughter and struck them, during his absence from the farm, was held admissible to rebut his defense. Similarly, appellant Jackson attempted to interpose a theory of self-defense through his presentation of evidence concerning decedent's bad temper and through his testimony that he carried the

gun for protection. Thus, both the cross-examination of appellant and the testimony of the rebuttal witness about appellant's prior threats to other foremen at the mill were proper, under the *Robertson* and *Henderson* cases.

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 366 N.E.2d 1186.