**Pamela K. McFARLAND, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 1277S822.

Supreme Court of Indiana.

June 14, 1979.

Rehearing Denied Aug. 20, 1979.

Paul J. Giorgi, Merrillville, for appellant.

Theodore L. Sendak, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Pamela K. McFarland, was convicted by a jury of second-degree murder, Ind.Code 35–1–54–1 (Burns 1975), and sentenced to an indeterminate sentence of fifteen to twenty-five years in the Indiana Women's Prison. She now appeals raising the following issues:

1. Whether the trial court erred in interrogating two jurors outside the presence of defendant concerning defendant's motion to excuse the jurors for cause and in denying defendant's motion for mistrial;

2. Whether the trial court erred in allowing the state to introduce improper character evidence on rebuttal;

3. Whether the trial court erred in refusing to give defendant's tendered instructions regarding the elements of the principal charge and lesser offenses included therein;

4. Whether the trial court erred in refusing to give defendant's tendered instructions which defined the terms "malice" and "in a sudden heat";

5. Whether the trial court erred in refusing to give defendant's tendered instruction and in giving the state's tendered instruction which defined the term "premeditation";

6. Whether the trial court erred in giving the state's instructions regarding self-defense and in refusing to give defendant's tendered instructions regarding self-defense;

7. Whether the verdict of the jury and the judgment of the trial court are contrary to law and not supported by the evidence.

The facts most favorable to the state are as follows. On the morning of January 10, 1977, defendant and the victim, Lawrence W. Godwin, had been grocery shopping. Defendant drove the victim in her car. Upon arriving at the victim's apartment, the two began arguing about whether defendant would accompany Godwin to his apartment. Defendant then pulled out a gun and shot the victim through the heart. Godwin fell to the ground and defendant shot him four more times. The victim died of the gunshot wounds.

Defendant and the victim had been dating and living together off and on for approximately six to seven months. Defendant did not know that the victim was married. When she discovered that Godwin was married, she arranged a confrontation between Godwin and his estranged wife. Godwin reportedly became very angry and while threatening his wife with a knife he inadvertently struck defendant, drawing blood.

After this incident, the relationship between defendant and Godwin deteriorated. She moved out of their shared apartment. They frequently argued at their common place of employment and Godwin slapped her. In November, 1977, defendant purchased a handgun at a pawnshop. Godwin showed up at the pawnshop and accosted her.

Defendant gave up her last attempt at reconciliation approximately two weeks prior to the shooting.

I.

During the course of the trial a regular juror and an alternate juror notified the bailiff that they had questions for the trial judge. They were taken to the judge's chambers where they asked their questions in the presence of the judge, counsel for defendant, and the prosecuting attorney.

The discussion with the alternate juror is raised as error only because of the fact of her communication and not because of the content of her conversation. Therefore, we will here set forth only a summary of the discussion with the regular juror.

The juror asked if the gun used in the shooting was registered. The judge responded that he did not believe he was at liberty to answer that question. Counsel for defendant then interrogated the juror. He pointed out that on voir dire he had asked all the jurors whether the question of registration of the weapon would make any difference in their deliberations or make it impossible for them to be fair and impartial. All had indicated that such a factor would make no difference. Defense counsel then asked the juror if her attitude had changed in this regard and was reflected by her question. The juror indicated that it would not make any difference, that she was merely asking to satisfy her own curiosity. The judge then admonished the juror not to discuss what took place in this conference with any of the other jurors. The juror indicated that she had not mentioned her concern to any of the other jurors.

The defendant's counsel then moved for a mistrial. He asserted that the fact that the juror asked about registration of the gun, a fact not in evidence, indicated that this unresolved doubt in her mind would make a difference in her deliberations regardless of her representations to the contrary. The judge denied the motion.

Defendant claims that the trial court committed two errors in connection with this conference. First, she contends that it was error for the court to communicate with the jurors while she was absent.

In *Deming v. State*, (1956) 235 Ind. 282, 133 N.E.2d 51, this Court held:

" 'Accused must be present when there is any communication between the judge and the jury, after their retirement, and his absence at such time is ordinarily reversible error.' " 235 Ind. at 284, 133 N.E.2d at 52.

However, the rule is not violated where the judge communicates with the jury as to matters not affecting the interest of the accused which the jury is to consider.

In *Deming*, this Court found reversible error. However, in that case the trial judge had answered the juror's questions regarding the possibility of parole for the defendant if convicted. This Court held that such a communication was related to substantial rights of the defendant and raised doubts as to the fairness and impartiality of the jury's deliberations. Therefore, prejudice to the defendant was presumed.

Prejudice is presumed if the communication with the jury when the defendant is absent is not explained. However, if an explanation is offered and this Court is satisfied that no prejudice to the defendant resulted, then the judgment of the trial court will be left undisturbed. *Gann v. State*, (1975) 263 Ind. 297, 330 N.E.2d 88.

"Only communications relating to the substantive rights of the accused give rise to presumptions of harm; such communications usually involve ex parte delivery of legal opinions or instructions to the jury." *Bruce v. State*, (1978) Ind., 375 N.E.2d 1042, 1068.

In the instant case, we are not convinced that the communication between this one juror and the judge can be elevated to the status of reversible error. We do not have a case in which the judge has addressed the entire jury in a situation analagous to the giving of instructions that this Court found in *Deming v. State, supra*. In fact, it stretches the facts to label the conference a communication between the judge and a juror. The trial judge was not responsive to the juror's question and his only other words were in admonishment of the juror not to discuss the conference with other jurors. The only other discussion in the conference was between the juror and the defense counsel. It does not appear that defendant's substantive rights were involved and it appears that her counsel adequately represented her in the conference. It was not error to hold this conference in defendant's absence.

Defendant further urges that the trial court erred in denying her motion for mistrial. Defendant asserts that the motion should have been granted because of an irregularity which occurred during the voir dire selection of the jury. Since the matter of gun registration was the subject of the juror's question to the judge, defendant asserts that her answers on voir dire were not altogether truthful. Defendant claims that in order to avoid ruling in favor of a mistrial, the court should have interrogated the juror to determine the extent of her prejudice, if any, against defendant and then attempt to cure that prejudice by admonishment to the juror or jury concerning the question posed by the juror.

The purpose of voir dire is twofold. Counsel seeks to ascertain whether a cause for challenge exists and whether it is wise to exercise his peremptory challenge. It is the duty of each juror to answer all questions on voir dire fully and truthfully. *Johnston v. State*, (1958) 239 Ind. 77, 155 N.E.2d 129. "If the juror lied, his misconduct was ground for a new trial." *Barnes v. State*, (1975) 263 Ind. 320, 325, 330 N.E.2d 743, 747.

This Court has set out the proper procedure for a situation such as occurred in the case at bar as follows:

"We believe that the trial court pursued the proper course in dealing with the potential prejudice of this juror: a hearing, out of the presence of the remainder of the jury to determine whether (1) the juror's inaccurate response indicates bias or lack of disinterest, and (2) whether the hearing itself has created a bias in the juror. The court should then allow the defendant to challenge the juror for cause, and should excuse the juror and declare a mistrial if bias is found to be present." *Stevens v. State*, (1976) 265 Ind. 396, 403, 354 N.E.2d 727, 732.

■ Here the trial court held just such a hearing when the juror asked her question of the court. Counsel for defendant conducted an extensive interrogation of the juror regarding the matter which he asserted as cause in his motion for mistrial. The trial judge heard all of the discussion and had ample opportunity to determine whether the juror was truthful in that conference and during voir dire. She indicated at all times that her deliberations would not be influenced by the matter of gun registration. The trial judge was in a better position than this Court to determine the veracity of the juror.

The ruling on defendant's motion in this instance was within the sound discretion of the trial court. *Stevens v. State, supra.* We find no error here.

## II.

Defendant next asserts that the trial court erred in allowing the state to introduce specific acts of misconduct through its rebuttal witnesses.

The state called as a rebuttal witness one Debra King. She testified that she caught defendant with her estranged husband in his apartment. She indicated their state of undress at the time. Ms. King gave details of threats on her life from defendant.

Defendant argues that the threats and circumstances of defendant's relationship with the witness's now ex-husband were introduced "for the purpose of rebutting [defendant's] general moral character and her general reputation in the community for peace and quietude." Furthermore, defendant asserts that this evidence attacks her reputation for chastity which is not at issue in a homicide case.

■ Generally, evidence of specific acts is not competent to prove or, in this case, to disprove general reputation. Even on cross-examination of a defendant, the state cannot inquire into specific acts of misconduct other than prior convictions. *Hensley v. State,* (1971) 256 Ind. 258, 268 N.E.2d 90.

■ However, the *Hensley* rule is subject to certain exceptions. "[W]hen defendant attempts to prove a factual defense which justifies his actions, specific acts of prior conduct are admissible to rebut the defense." *Jackson v. State,* (1977) Ind., 366 N.E.2d 1186, 1189. In *Jackson,* this Court noted that the defendant had interposed a theory of self-defense and that the state's rebuttal evidence of prior threats was properly admitted. We have a virtually identical situation here and find no error in the admission of the state's rebuttal evidence as to prior misconduct of defendant.

Defendant claims that part of witness King's testimony attacked defendant's reputation for chastity, being irrelevant and, therefore, inadmissible in this homicide trial. We find no merit to this contention. The testimony from which one could infer unchasteness was merely background for King's testimony regarding defendant's threats on the witness's life.

"Moreover, we must recognize that a considerable leeway is allowed even on direct examination for proof of facts which are not really offered as bearing on the dispute, however defined, but merely as details which fill in the background of the narrative and give it interest, color, and lifelikeness." McCormick, Evidence, § 185, p. 434 (2d Ed. 1972).

Witness King's testimony establishes how she came to know defendant and lends understanding to her later statements re-

garding threats. All of this witness's testimony was properly admitted.

### III.

Defendant next assigns as error the trial court's refusal to grant her tendered instructions elaborately setting forth the elements of the principal charge and lesser included offenses. The trial court did give instructions which substantially set forth the statutory definitions of the crimes charged.

Defendant claims that the court's instructions failed to explain to the jurors exactly what the elements of the various crimes were. We cannot understand why a reading of the statutory definition of a crime, the very source of the elements of the crime, would not adequately inform the jury of the necessary elements.

Defendant's tendered instructions were not improperly refused by the trial court since the substance of her instructions were adequately covered by the instructions actually given. *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770.

### IV.

Defendant next urges that the trial court erred in failing to giver her instructions defining the terms "malice" and "in a sudden heat." We find that the trial court committed no error in declining to define these terms in its instructions to the jury.

"Terms used in instructions should be defined by the court where they have a technical meaning, or may be misapplied by the jury; but where the terms are in common use and are such as can be understood by a person of ordinary intelligence they need not be defined or explained in the absence of anything in the charge to obscure their meaning." 23A C.J.S. Criminal Law § 1191, p. 484.

In the instant case, it does not appear that the jury was in anyway confused by the terms which defendant claims needed definition. Indeed the evidence supports the jury's verdict of guilty of murder in the second degree. Therefore, one cannot say that the jury struggled with the terms "malice" and "in a sudden heat" which represent the distinction between second-degree murder and voluntary manslaughter. There was no error here.

### V.

Defendant claims that the trial court erred in giving the state's definition of premeditation and rejecting her own. Since the jury found defendant guilty only of second-degree murder, any issue involving an instruction on premeditation is moot.

### VI.

Defendant next urges that the trial court erred in giving the state's tendered instructions regarding self-defense and in refusing her instructions regarding self-defense. We find no merit to this contention.

The trial court gave four instructions on self-defense, three of which are the subject of defendant's objection. The first of these challenged instructions is an adequate statement of the law and is substantially identical to the instruction which this Court noted with approval in *Hoover v. State*, (1978) Ind., 376 N.E.2d 1152.

Defendant also claims that the trial court erred in instructing the jury as follows:

"Force that may be used in self-defense is limited to what is reasonably necessary, to repel attack, and a deadly weapon cannot be used to repel the slightest assault."

Again, an instruction substantially identical to this one was approved in *Kriete v. State*, (1975) 263 Ind. 381, 332 N.E.2d 209. Defendant objects to the modification of the instruction given in *Kriete* by changing the word "slight" to "slightest." Such a modification could not have prejudiced defendant. On the contrary, use of the word "slightest" actually further limits the instances in which a deadly weapon cannot be used in self-defense.

This instruction properly indicates that self-defense is limited to force reason-

ably necessary to repel the attack. The last clause does not indicate to the jury that a person may use a deadly weapon to repel attack only in case of aggravated assault or use of deadly force by an attacker. It only indicates that use of a deadly weapon may be an improper overreaction to an assault.

 Defendant claims that, taken together, the trial court's instructions regarding self-defense do not make it clear that the situation faced by defendant must be determined from the standpoint of defendant and under all the existing circumstances. The following language in the instruction makes clear the law in this regard:

> "The danger of great bodily harm need not be actual. It need only be apparent to a reasonable person under the circumstance. The law protects persons who feel compelled to act at such times even though in retrospect it is proved they have erred if they acted reasonable in view of the surrounding circumstances under which the events took place."

We find no error in the trial court's instructions to the jury on the subject of self-defense.

### VII.

 Defendant argues that the verdict of the jury and the judgment of the trial court are contrary to law and not supported by the evidence.

We find ample evidence of probative value in the record to support the jury finding beyond a reasonable doubt that defendant did not act in self-defense.

This Court has repeatedly held that "malice can be inferred from the deliberate use of a deadly weapon in a manner likely to produce death," and it is for the jury to determine whether "defendant's reason was obscured and that he was rendered incapable of cool reflection." *Hoover v. State*, (1978) Ind., 376 N.E.2d 1152, 1155. Therefore, the jury's verdict of guilty of murder in the second-degree is supported by the evidence at trial.

For all the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.