Donald B. CREEK, Appellant,

v.

STATE of Indiana, Appellee.

No. 48S00–8701–CR–58.

Supreme Court of Indiana.

May 26, 1988.

H. Erskine Cherry, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in a conviction of appellant of Kidnapping, a Class A felony, for which he received a sentence of thirty (30) years; two counts of Criminal Confinement, a Class B felony, for which he received ten (10) years on each count; and Carrying a Handgun Without a License, a Class D felony, for which he received a sentence of one (1) year, all sentences to run concurrently.

The facts are: On July 24, 1985, Christina Marie Campbell, Richard D. McGlynn, and Tina Creek were watching television in Anita Zdzieblowski's trailer in the Modern Trailer Court in Madison County, Indiana. Creek answered a knock at the door and discovered her husband, Donald B. Creek, appellant herein, from whom Creek was separated, was at the door. He was angry and demanded entry into the trailer. Despite Creek's refusal, appellant forced entry into the trailer, grabbed Creek, shoved her against the television, and pointed a gun at her. He also pointed the gun at the others in the room and told them not to tell any body or he would kill Creek and then return for them.

Appellant then grabbed Creek's arm and removed her to his trailer. Later, while appellant and Creek were standing outside appellant's trailer, Creek observed David Stinefield who also lived in the trailer park. Creek escaped from appellant, encountered Stinefield and informed him appellant had a gun. Stinefield then drove Creek to the Alexandria Police Station. On the way they met Campbell, McGlynn, and Zdzieblowski, and all five went to the police station where they filled out reports as to what had happened. This information was given to Captain Steve Skaggs and Captain Jack Malston of the Alexandria Police Department.

Creek, McGlynn and his two sons, and Stinefield then went to Stinefield's trailer where each stationed themselves at different windows as lookouts. At approximately 11:00 p.m., Zdzieblowski went to Stinefield's trailer and informed Creek that appellant was at her trailer, and if Creek did not go to the trailer within minutes, the appellant was going to hurt or kill Zdzieblowski's son Adam. The two women then walked to the trailer while McGlynn telephoned the police. Creek went into the trailer, and appellant placed a gun to her side. Creek and appellant then went to appellant's trailer where they stayed until police arrived. Appellant forced Creek to lie down in the back of the trailer and remain silent while police knocked on the outside.

When the police left without entering, appellant and Creek climbed out of a trailer window and left in appellant's car. Appellant first drove to Elwood where he was unable to find a hotel room, then he drove to Marion where he again was unable to find a vacancy. He then drove to Wabash where Creek was able to alert employees at a motel of her plight. The employees alerted the police department, and a short time later the police arrived. Appellant then placed the gun to Creek's head and threatened to kill her if the police did not go away. After approximately an hour of this type of conduct, appellant surrendered to the police.

■ Appellant claims the trial court erred in excusing a juror after the jury was impaneled and sworn without conducting a hearing in the presence of counsel pertaining to the dismissal of the juror. We would first observe that appellant failed to object at the time the juror was dismissed; thus, no error was preserved on that question. *See Phillips v. State* (1986), Ind., 496 N.E.2d 87.

■ However, we will examine this issue for fundamental error. When the issue first arose, the judge indicated that he had spoken over the telephone with both the juror and her husband. They indicated that the juror's presence on the jury was causing great marital strife and the juror felt she could not emotionally continue to serve under the circumstances. The judge therefore exercised his prerogative in dismissing the juror. There is nothing in this record to indicate any prejudice to appellant emanating from such dismissal. We see no fundamental ground for reversal because of the court's action. *See Newman v. State* (1985), Ind., 485 N.E.2d 58. By the same token, the failure of the trial court to hold a hearing on the matter does not give rise to a suggestion of prejudice. No reversal is indicated. *See Campbell v. State* (1986), Ind., 500 N.E.2d 174.

■ Appellant claims the trial court erred by denying his motion for a mistrial after discovery of a relationship between a juror and a nonparty State's witness. He points out that when this issue arose, both the State and the defendant consented to a discharge of the jury. The record shows that during *voir dire* Juror Pickens was not aware that he and witness Stinefield were employed at the same location.

Although he knew Stinefield slightly as a co-worker, he did not know his first name and knew him only by the name "Stiney." After having been picked for jury duty, Pickens saw Stinefield at work and asked him if he knew a Dave Stinefield, to which Stinefield replied, "I am Dave Stinefield." At which time, there was a mutual agreement between the two that they would not discuss the matter further. This conversation constituted the entire contact between the juror and the State's witness.

The fact that Stinefield and Pickens did not really know each other but only had casual contact because of their employment and the fact that they had no conversation whatever concerning the merits of the case was ample reason for the judge to exercise his discretion and deny the motion for mistrial. *Woolston v. State* (1983), Ind., 453 N.E.2d 965.

Appellant claims the trial court erred by refusing to allow appellant to testify and explain the circumstances surrounding his actions or to explain the evidence presented by the State. He claims he should have been allowed to explain why he was carrying a gun and should have been allowed to "explain evidence which had a bearing upon the facts in this case, which were not collateral matters, but which related directly not only to the circumstances surrounding the alleged acts of the defendant but also related to the credibility of the defendant." The State first points out that this argument should be rejected because it is merely stated in conclusory terms, citing *Blackburn v. State* (1987), Ind., 502 N.E.2d 899 and other cases. We fully agree with the State's observation that appellant's argument is merely conclusory and does not cite us to any specifics to support his generalities.

■ Appellant did state in his offer to prove that at the trial court level he wanted to explain he was carrying a gun because his wife worked at a topless bar which was a rough place, and he had gone there the night before to talk to her and had taken the gun from his mother's house for his protection. We fail to see what possible relationship this had with appellant's conduct with the gun the following day. We see no abuse of discretion of the trial court in refusing to allow such testimony. *Denton v. State* (1986), Ind., 496 N.E.2d 576.

■ Appellant claims the trial court erred in limiting him in the presentation of evidence both on cross-examination and through defense witnesses pertaining to the state of mind of the victims and appellant as well as the relationship of the victims to appellant. His charge in this regard is that the court refused to admit his Exhibit No. 6 which was a tape-recorded conversation of witness Tina Creek with appellant's previous counsel. Again, appellant furnishes us with no specifics as to why this tape should have been admitted nor do we perceive any lack of evidence demonstrating the relationship between appellant, his wife, and the other persons

involved. Appellant has demonstrated no reversible error on this subject.

■ Appellant claims the trial court erred in allowing the State to present evidence of events in a motel room in Kosciusko County when appellant was facing trial on the exact or identical charge in that jurisdiction. Appellant was subject to be tried in either county in which his activities took place. The fact that there was a charge pending in Kosciusko County was of no moment to the instant prosecution because appellant had not been placed in jeopardy on that charge in that county. Thus, he was subject to prosecution in Madison County. The events which occurred in Kosciusko County were a part of the *res gestae* of the charges against appellant and were fully admissible. *Gambill v. State* (1985), Ind., 479 N.E.2d 523.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

After the jury and alternates were selected and sworn, the trial court spoke over the telephone with a juror and with the husband of that juror. Upon the basis of the information he received, he immediately discharged the juror. The juror and her husband were not under oath. Defendant and his counsel had no notice of and were not present during this process. Thereafter, the trial court, in open court, made a statement in the record describing what had occurred, and asked counsel, "Does anybody wish to make any record on that?" Defense counsel replied, "No, sir." As a result of the discharge of this juror, an alternate juror was substituted. The alternate advised the court that he was acquainted with the State's witness Dave Stinefield, contrary to the denial of such fact during voir dire. Following a hearing at which both the alternate juror and the witness Stinefield were examined, the prosecution and defense each took the position that it would have challenged the juror had

it known of the connection between the two, and each agreed to declaring a mistrial as there were no other alternates available. I would reverse and remand for new trial.

The accused has the right to be present at every stage of the criminal trial. A waiver of the right must be voluntary and express. *Martin v. State* (1984), Ind., 457 N.E.2d 1085. A violation of the right produces a rebuttable presumption of prejudice. *McFarland v. State* (1979), 271 Ind. 105, 390 N.E.2d 989. A violation of the right occurs when the judge communicates with the jury on matters relating to the substantive rights of the accused. *Bruce v. State* (1978), 268 Ind. 180, 375 N.E.2d 1042. The discharge of the jury is a stage of the criminal trial at which the right obtains. *Jenkins v. State* (1986), Ind., 492 N.E.2d 666. I believe the conclusion follows *a fortiori* that the right to be present obtains when a judge conducts procedures to discharge a single juror as was done in this case. I also believe that the record made by the court is insufficient to rebut the presumption of prejudice, and that counsel's negative reply to the judge's offer to make a further record is insufficient to show a waiver of the right to be present.

I also see an abuse of discretion in the refusal to set aside this submission. The alternate juror, after his selection, approached the witness Stinefield in the workplace and asked him if he knew a Dave Stinefield. The juror testified that when the witness disclosed his true name to be Dave Stinefield, he was "shocked". The juror had admitted acquaintances in the Stinefield family, and those connections motivated him to contact the fellow worker he knew as Stiney. This matter was on his mind, and the revelation of the connection disturbed him.

Stinefield described himself as one with whom everyone at work liked to talk. He remembered talking about the case with fellow workers but not with the juror. Both Stinefield and the juror worked in the same department at the plant but on different shifts. Although neither talked about the alleged crime with one another, it may

be properly inferred that the subject was being talked around in the plant. Stinefield in addition was one of the persons victimized by appellant under the story of the crimes. I believe there is natural peer pressure in the workplace to sympathize with the plight of fellow workers. The testimony of both Stinefield and the juror that they had not much contact and had not talked together about the case, does not dispel the potential which an acquittal would have to subject the juror to criticism in the workplace.