**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 29 2013, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DEMARKUS ADAMS,               )
            )
  Appellant-Defendant,      )
            )
    vs.               )  No. 49A02-1210-CR-776
            )
STATE OF INDIANA,             )
            )
  Appellee-Plaintiff.       )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Jr., Judge
Cause No. 49G02-1110-MR-71432

**April 29, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

DeMarkus Adams appeals his conviction for murder. Adams raises one issue, which we revise and restate as whether the trial court committed fundamental error in failing to *sua sponte* hold a hearing to question a juror or whether Adams was deprived of an impartial jury. We affirm.

FACTS AND PROCEDURAL HISTORY

On July 29, 2011, a group of about four or five people, which included Adams, had gathered in front of the house of Byron Pope's grandmother. Pope told the group and Adams to leave, and Adams responded by stating "[w]ho the f--- do you think you're talking to" and firing two shots toward Pope's face. Transcript at 25. Pope fell to the ground, and Adams stated "he don't know who in the f--- he thinks he talking to" and walked around Pope's body and fired three or four additional shots at Pope. Id. at 26. Adams and the others left in a van. Pope later died, and Adams was identified as the person who shot him. Police discovered a number of spent casings and a spent bullet from the scene where Pope had been shot. On August 15, 2011, Adams sold a 9mm handgun, and subsequent analysis showed that the casings and spent bullet recovered from the scene of the shooting and a spent bullet recovered from Pope's stomach had each been fired by the handgun sold by Adams.

On October 6, 2011, the State charged Adams with murder and filed a sentencing enhancement regarding the use of a firearm in the commission of the offense. At a two-day jury trial in August 2012, Indianapolis Metropolitan Police Detective Lesia Moore testified that, after a witness to the shooting identified Adams as the person who shot Pope, she researched possible associates of Adams who may have been with him the

night of the shooting. When asked whether she was able to identify any persons she thought may have been associated with Adams, Detective Moore provided the names of DeJuan Crenshaw, Nate Armstrong, and a third person. Detective Moore testified that an eyewitness identified Armstrong as one of the men present at the shooting but that he was not the person who shot Pope. Detective Moore indicated that Crenshaw was not positively identified by the witnesses. During cross-examination, Detective Moore again testified that one witness identified Armstrong as a person at the scene and also stated that Armstrong was not the person who shot Pope and that Armstrong was engaged in an argument with Adams.

While the jury was deliberating, the court noted that the State had made known to the court and Adams's defense counsel a certain police report regarding an incident which occurred on April 27, 2012, in which Juror No. 4 was listed as a potential victim and Crenshaw and Armstrong were listed as possible suspects. The police report indicated that police were dispatched to an area in response to a report that two vehicles were driving in the area and had fired shots at each other. The report further indicated that bullet holes were discovered in the exterior of two houses, one of which belonged to Juror No. 4, and in the windshield of another vehicle. The report indicated that one bullet hole was found in the exterior of the house of Juror No. 4 and that Juror No. 4 reported that "she heard several shots but did not see the shooters." State's Exhibit 43. The report identified thirteen persons as persons of involvement, including Armstrong and Crenshaw as "Detained" and Juror No. 4 as "Victim."[1] Id. The report indicated that no arrests were

---

[1] The report identified three persons including Juror No. 4 as "Victim[s]," and the other ten persons were identified as "Detained."

made. The police report was entered into evidence as State's Exhibit 43 for the purposes of the hearing and was not sent to the jury room.

The court noted that Adams was in custody at the time of the April 27, 2012 incident. The court further noted that "it appears that this juror's – I think there was a couple bullet holes in her house in addition to a couple of other houses in the neighborhood that had bullet holes," that there were "some bullet holes in cars," that "[c]ertainly, those names were bantered about," that "the juror was read the instruction that told her that at anytime you realize you know something about this case or know a witness, or the defendant you're to notify the Court at your first opportunity,"[2] that the juror "has not done that," and that "it does not appear that any arrests were made as result" of the April 27th incident. Transcript at 192. The court asked Adams's defense counsel "what if anything he want[ed] to do," and defense counsel stated: "I want a copy of the report and my position is that the defense is not required to do anything. It's not enough credible, corroborated, whatever information from which the defense can make a[n] intelligent decision to act in any way or the other." Id. at 193. The court agreed and stated that it could ask Juror No. 4 "if those names sounded familiar to her," that it was "not sure what that would accomplish," and that it appeared that based on defense counsel's strategy that he did not believe it was "necessary to bring here [sic] in or do anything," and defense counsel agreed. Id.

The jury found Adams guilty of murder, and the State dismissed the sentencing enhancement charge. The court sentenced Adams to fifty-five years.

---

[2] Preliminary Instruction 16 provided: "If, at any time, you realize you know something about the case or know a witness or the Defendant, you must inform the bailiff privately at your earliest opportunity." Appellant's Appendix at 70.

DISCUSSION

The issue is whether the trial court committed fundamental error in failing to *sua sponte* hold a hearing to question Juror No. 4 or whether Adams was deprived of an impartial jury. Adams states that Juror No. 4, in her pre-trial questionnaire, was asked whether she had been a victim of a crime, that Juror No. 4 responded that she had not,[3] and that State's Exhibit 43 indicated that she had been the victim of a crime. Adams maintains that, upon receiving information that Juror No. 4 made a false statement on the questionnaire and may have had personal knowledge bearing upon the case, the trial court erred and abused its discretion in failing to hold a hearing to inquire into the misconduct of Juror No. 4. Adams further argues that the court's error was fundamental and that the resulting harm or potential for harm was substantial. In support of his claim, Adams cites to the U.S. Constitution and the Indiana Constitution. See U.S. CONST. AMEND. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."); IND. CONST. ART. 1, § 13(a) ("In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed[.]"). Adams requests this court to remand for a hearing on Juror No. 4's potential bias and misconduct.

---

[3] Adams does not point to the record to show Juror No. 4's responses on the pre-trial questionnaire. Adams points to the transcript of *voir dire* which shows that the State addressed Juror No. 4 and stated in part "You've never served—actually you're another one of what I call—and this is a good thing, boring jurors. Where there's nothing I write down to talk to you about. Is there anything that you want to tell me about yourself," and Juror No. 4 responded stating "Not that I can think of." Transcript at 254.

The State argues that Adams has waived and invited any error and that the responses Juror No. 4 provided during *voir dire* provide no reason to be concerned that Adams was deprived of an impartial jury. In his reply brief, Adams argues that the trial court failed to take the necessary steps to learn whether Juror No. 4 was familiar with Armstrong and Crenshaw and that the court had no ability to evaluate Juror No. 4's bias because it failed to question the possible juror misconduct.

To the extent Adams argues that the trial court erred or abused its discretion in failing to hold a hearing after learning of the April 27, 2012 police report, we note that Adams did not request the court to conduct such a hearing, did not object to the failure of the court to conduct a hearing or remove Juror No. 4 from the jury, and did not seek a mistrial. As a result, Adams failed to preserve and waived the issue for appeal. See Booher v. State, 773 N.E.2d 814, 822 (Ind. 2002) ("A party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error.") (citations omitted); Robles v. State, 705 N.E.2d 183, 187 (Ind. Ct. App. 1998) (stating that a party may not sit idly by, permit the court to act in a claimed erroneous manner, and then attempt to take advantage of the alleged error at a later time, and that a timely objection must be lodged so that the alleged error may be promptly corrected by the trial court); Poindexter v. State, 664 N.E.2d 398, 401 (Ind. Ct. App. 1996) (finding that any error in the trial court's response to the jury's note was either waived or invited).

To the extent Adams argues that the court committed fundamental error in failing to *sua sponte* hold a hearing to question Juror No. 4 about any potential bias and that he

was deprived of an impartial jury, we note that it is the duty of each juror to answer all questions on *voir dire* fully and truthfully. McFarland v. State, 271 Ind. 105, 110, 390 N.E.2d 989, 992 (1979). In claims of juror misconduct under the Indiana Constitution, "to warrant a new trial, there must be a showing that the misconduct was gross, and that it probably harmed the defendant." Wilkes v. State, __ N.E.2d __, __ (Ind. April 4, 2013) (citing Lopez v. State, 527 N.E.2d 1119, 1130 (Ind. 1988)). In State v. Dye, the Court held:

> The United States Supreme Court articulated a particularized test for determining whether a new trial is required due to juror deceit during *voir dire* or on jury questionnaires in McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 104 S. Ct. 845 (1984). The two-part test states that in order to obtain a new trial, the defendant "must first demonstrate that a juror failed to answer honestly a material question . . . and then further show that a correct response would have provided a valid basis for a challenge for cause."[4] Id. at 556, 104 S. Ct. at 850.

---

[4] Ind. Code § 35-37-1-5(a) provides:

> The following are good causes for challenge to any person called as a juror in any criminal trial:
>
> (1) That the person was a member of the grand jury that found the indictment.
> (2) That the person has formed or expressed an opinion as to the guilt or innocence of the defendant. However, such an opinion is subject to subsection (b).
> (3) If the state is seeking a death sentence, that the person entertains such conscientious opinions as would preclude the person from recommending that the death penalty be imposed.
> (4) That the person is related within the fifth degree to the person alleged to be the victim of the offense charged, to the person on whose complaint the prosecution was instituted, or to the defendant.
> (5) That the person has served on a trial jury which was sworn in the same case against the same defendant, and which jury was discharged after hearing the evidence, or rendered a verdict which was set aside.
> (6) That the person served as a juror in a civil case brought against the defendant for the same act.
> (7) That the person has been subpoenaed in good faith as a witness in the case.
> (8) That the person is a mentally incompetent person.
> (9) That the person is an alien.

7

784 N.E.2d 469, 472-473 (Ind. 2003).  In Warner v. State, the Indiana Supreme Court held:

> Generally, proof that a juror was biased against the defendant or lied during *voir dire* entitles a defendant to a new trial.  Lopez [], 527 N.E.2d [at] 1130 . . . .  A defendant seeking a new trial because of juror misconduct must show gross misconduct that probably harmed the defendant.  Reed v. State, 479 N.E.2d 1248, 1251 (Ind. 1985).  We review the trial judge's determination on these points for abuse of discretion.  Lopez, 527 N.E.2d at 1130.

773 N.E.2d 239, 246 (Ind. 2002).  See Allen v. State, 749 N.E.2d 1158, 1164 (Ind. 2001) ("juror misconduct will warrant a new trial only when the misconduct is both 'gross' and 'harmed the defendant'"), reh'g denied, cert. denied, 535 U.S. 1061 (2002); see also Wilkes, __ N.E.2d at __, __ (noting that while the juror should have answered questions fully, the juror's actions did not rise to the level of gross misconduct) (comparing Dye, 784 N.E.2d at 474-475 (finding gross misconduct in murder trial that involved allegations of rape where juror hid the fact that her brother had been convicted of murder and received a death sentence and the fact that she had been a victim of rape and that she recalled and compared her experience during the trial), with Warner, 773 N.E.2d at 246-247 (finding no gross misconduct in murder trial where juror unintentionally omitted the

---

(10)  That the person has been called to sit on the jury at the person's own solicitation or that of another.

(11)  That the person is biased or prejudiced for or against the defendant.

(12)  That the person does not have the qualifications for a juror prescribed by law.

(13)  That, from defective sight or hearing, ignorance of the English language, or other cause, the person is unable to comprehend the evidence and the instructions of the court.

(14)  That the person has a personal interest in the result of the trial.

(15)  If the person is not a member of the regular panel, that the person has served on a jury within twelve (12) months immediately preceding the trial.

fact that her sister had been murdered and juror testified that the incident did not affect her impartiality)).

The record reveals that a police report identified as State's Exhibit 43 related to a report of an incident which occurred on April 27, 2012. The report identified Juror No. 4, provided next to the name "Person Involvement: [] Victim," stated that an officer spoke with Juror No. 4, that Juror No. 4 "had 1 bullet hole in the exterior of her house," and that Juror No. 4 "heard several shots but did not see the shooters." State's Exhibit 43. The report also identified Crenshaw and Armstrong, provided next to their names "Person Involvement: [] Detained," and stated that Armstrong and Crenshaw along with three other subjects "had gang hits." Id. The police report indicated that no arrests were made.

We observe that the police report was not before the jury, and thus the record does not show that Juror No. 4 was aware that Armstrong and Crenshaw were among the subjects interviewed in connection with the April 27th incident. In addition, the report specifically stated that Juror No. 4 reported that she had not seen the shooters involved in the April 27th incident. The report does not provide that police shared the names of the persons interviewed, including Armstrong and Crenshaw, with Juror No. 4. We also observe that neither Armstrong nor Crenshaw were presented as witnesses or testified at Adams's trial. Although the police report identified her as such, it is possible that Juror No. 4 did not identify or think of herself as a victim of the April 27, 2012 incident during which a stray bullet struck her house where persons in two vehicles were shooting at each other while driving, and bullets struck her house, another house, and another vehicle. The record does not establish that Juror No. 4 knew the identity of Armstrong or

9

Crenshaw or that those men were involved in or interviewed in connection with the April 27th incident. Even if Juror No. 4 was a victim in the April 27th incident, that incident did not involve Adams, and Adams has not demonstrated that he would have been able to strike Juror No. 4 for cause under Ind. Code § 35-37-1-5.

While the answers on the questionnaire provided by Juror No. 4 may not have disclosed the fact that she spoke with police regarding the incident on April 27, 2012, involving shots fired between two moving vehicles which resulted in a bullet hole in the exterior of her house, we decline to find based upon the record that Juror No. 4 failed to answer the questionnaire fully or accurately, and, even if Juror No. 4's responses on the questionnaire or during *voir dire* were incomplete, we conclude that the record here does not demonstrate that Juror No. 4's actions rose to the level of gross misconduct or affected her or the jury's impartiality. See Wilkes, __ N.E.2d at __, __ (finding that the juror's answers were not untruthful, that the record did not demonstrate the juror lacked impartiality, and that the juror's actions in failing to fully answer two questions on the pre-trial questionnaire did not establish gross misconduct). Accordingly, we conclude that Adams has not demonstrated the court committed fundamental error or that he was deprived of an impartial jury.

CONCLUSION

For the foregoing reasons, we conclude that Adams waived the issue of whether the court abused its discretion in failing to hold a hearing to question Juror No. 4 and that Adams has failed to demonstrate fundamental error or that he was deprived of an impartial jury. We affirm Adams's conviction for murder.

10

Affirmed.

RILEY, J., and BRADFORD, J., concur.