HUBERT FERRIER *v.* STATE OF INDIANA.

[No. 1175S350. Filed March 31, 1977.]

*Harriette Bailey Conn,* Public Defender of Indiana, *David P. Freund, Bobby Jay Small,* Deputy Public Defenders, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged with murder in the first degree. He was convicted of that offense in a trial by jury and was sentenced to life imprisonment. His appeal to this Court presents three issues:

(1) Alleged error in the giving of the State's tendered instruction number 6 to the effect that voluntary drunkenness or intoxication does not excuse crime and that a defendant cannot escape punishment for a crime on the ground that he did an alleged unlawful act while drunk.

(2) Alleged error in the admission of State's photographs (Exhibits 21, 27 and 28) over objections that they were prejudicial, inflammatory, immaterial and irrelevant.

(3) Alleged error in the admission of hearsay evidence.

The evidence revealed that following a verbal confrontation in a bar with the deceased, the defendant left, went to his home and picked up a shotgun and shells, returned to the bar approximately twenty minutes later, renewed the confrontation, and shot and killed his adversary. The defense included a showing that the defendant had been drinking heavily for several hours immediately preceding the argument.

## ISSUE I

Over the defendant's objection that the instruction was proper only with respect to a crime involving general intent and was not applicable to the case at bar because it required proof of a specific intent, the Court gave the State's tendered instruction number 6, as follows:

"The Court further instructs you that the condition of mind which usually and immediately follows the excessive

use of alcoholic liquors is not, in and of itself, the unsoundness of mind meant by our law. Mere voluntary drunkenness or intoxication does not excuse crime and a defendant cannot escape punishment for a crime on the ground that he did an alleged unlawful act while drunk; and such drunkenness and/or intoxication does not lessen or abate the severity of punishment prescribed by law. In other words, mere voluntary drunkenness or intoxication is no excuse for crime, nor does it mitigate or excuse an offense actually committed."

The court also gave the defendant's tendered instruction number 2, as follows:

"It is for you to determine the extent of the defendant's intoxication, and whether it operated to prevent his forming the intent necessary to constitute the crime.

"Whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute a particular type or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act. Any intoxication, not necessarily total, may be considered on the question of intent.

"The term 'intoxication' means a condition resulting from the drinking of alcoholic beverages which impair a person's normal faculties—either of perception or will or judgment—so that he or she no longer has the capacity to know the nature of the act he is committing, or the capacity to form an intent to commit such an act."

Citing *O'Neil* v. *State*, (1939) 216 Ind. 21, 22 N.E.2d 825, the defendant charges that the instruction objected to removed, in effect, the question of intoxication from the jury and that the giving of his tendered instruction number 2 did not cure the error.

It was held under similar circumstances in *O'Neil*, as pointed out by the defendant, that an instruction incorrectly stating a proposition of law and not withdrawn is not cured by another instruction correctly stating the proposition. However, the *O'Neil* case can be readily distinguished from the one at bar. In that case the instruction complained of was as follows:

" 'I further instruct you that voluntary drunkenness cannot justify, excuse or mitigate the commission of a crime, and the fact, if it be a fact, that the defendant may have been drunk *to any degree* at the time of the killing cannot be taken into consideration by the jury in making up their verdict.' " (Emphasis added). 216 Ind. 24.

We there said:

"The instruction now under consideration is subject to the same infirmities as the one condemned in the Booher case, supra, if, indeed, it is not even more objectionable because in the case at bar the jury was directly told that the drunkenness of the defendant *to any degree,* if shown, could not be taken into consideration in arriving at a verdict. * * *." (Emphasis added). 216 Ind. 26.

In *Booher* v. *State,* (1901) 156 Ind. 435, 60 N.E. 156, we held an instruction substantially like the one before us to be erroneous in a case where the appellant was charged with assault and battery with intent to commit murder and with conspiracy to commit murder and the defense was predicated upon intoxication. In that case, however, the general instruction that intoxication is not a defense was not followed by the exception covered by the defendant's tendered instruction number 2. The *Booher* court specifically said, "The court on its own motion gave to the jury upon the question of appellant's intoxication the following instruction, *which was the only one given upon that feature of the case: * * *."* (Emphasis added).

The instruction complained of in the case before us was not an erroneous statement of a proposition of law. It was incomplete, in view of the requirement of a specific intent embodied in this case. However, the deficiency was supplied by the defendant's tendered instruction number 2.

Instructions are to be considered with reference to each other, and as an entirety, and error in a particular instruction will not justify a reversal unless it is of such a nature that the whole charge of which it forms a part is thereby vitiated so as to mislead the jury as to the

law of the case. *Anderson* v. *State,* (1933) 205 Ind. 607, 186 N.E. 316.

## ISSUE II

State's Exhibits Nos. 21, 27 and 28 were admitted into evidence over the defendant's objections. The objection to No. 21 was that it was "repetitive," "prejudicial" and not "material." The objection to No. 27 was that it was "unnecessarily repetitive" and "prejudicial;" and the objection to No. 28 was that it was "repetitive" and not "relevant."

The defendant's motion to correct errors specifies grounds of objection somewhat different from those interposed at trial, in that "unnecessarily inflammatory" was added as an additional basis for the objections. The in-trial objections standing alone, appear to be of dubious specificity, and the failure to object on specific grounds is generally considered to be a waiver of the right to rely upon such grounds on appeal. *Jethroe* v. *State,* (1974) 262 Ind. 505, 319 N.E.2d 133, 137; *Tyler* v. *State,* (1968) 250 Ind. 419, 421, 236 N.E.2d 815; *Jones* v. *State,* (1973) 260 Ind. 463, 467, 296 N.E.2d 407. It is unnecessary for us to decide such question, however.

It is the defendant's argument on appeal, relying in the main upon *Kiefer* v. *State,* (1958) 239 Ind. 103, 153 N.E.2d 899, that Exhibits 21, 27 and 28 were repetitive and gruesome and either devoid of materiality or so lacking thereof that their only effect was to incite indignation and sympathy and thereby subvert the judicial objectives of logic and reason. Each case of a claim of error in the admission of gruesome graphic evidence must be determined in context, however, and we find no similarity in the circumstances of *Kiefer* and the case at bar.

In *Kiefer,* Exhibits 9, 10, 11 and 12 were accepted into evidence. They were photographs of the murder victim's nude body taken from different angles at the scene of the crime. Admittedly these photographs were somewhat repetitive and were gruesome, but they were nevertheless relevant to a

material issue in controversy. In addition, however, Exhibits 13 and 14 were admitted over proper objection. These photographs showed the victim's nude body, not as it appeared immediately following the crime but rather as it lay on a slab in the mortuary at the time an autopsy was performed. The first of these photographs, being State's Exhibit No. 13, shows the hands of a doctor and nurse with instruments, inside the deceased's chest. The other, State's Exhibit No. 14, is a photograph of deceased's nude body, lying face up on a slab and showing all of the knife wounds, plus additional incisions made in the body by the doctor in performing the autopsy. This photograph showed the body as it appeared after the doctor had finished with the autopsy and not as it appeared in the photographs taken at the scene of the crime.

In holding that the trial court "abused its discretion" in admitting Exhibits 13 and 14 in the *Kiefer* case, this Court said:

"State's Exhibits Nos. 13 and 14 show nothing and establish no facts not shown by State's Exhibits Nos. 9, 10, 11 and 12. State's Exhibit No. 13, as above stated, shows the hands and instruments of the surgeon inside the deceased's chest and State's Exhibit No. 14 shows additional incisions made by the doctor who performed the autopsy. Both these photographs and especially State's Exhibit No. 13, are very gruesome, revolting and inflammatory.

"These exhibits were not in any way necessary to establish the *corpus delicti*. They did not show the position of the parties to the crime nor correctly show the wounds of the victim or the cause of her death. They did not 'shed any light on any issue' or enlighten the jury on any fact in issue, but served only to arouse passion and prejudice.

"These exhibits were calculated to, and in our opinion did, only incite sympathy for the woman who lost her life and indignation against the appellant herein. They were unnecessary and were introduced only for the purpose of inflaming the jury's emotions."

By contrast to the *Kiefer* case, in the case at bar the truly gruesome exhibits were clearly admissible, and the challenged exhibits are both mild and innocuous by comparison. The

defendant killed the decedent at close range with a shotgun. The shot therefrom tore out a section of the decedent's neck leaving a cavity about the size of a man's fist. The jugular vein was obliterated, and the deceased died from the almost immediate loss of blood. These wounds were displayed by Exhibits 34 and 42, which were colored slides projected upon a screen, as were Exhibits 21, 27 and 28. The nature and the size of the wound being what they are, Exhibits 34 and 42 are as gruesome as can be visualized. On the other hand, Exhibit 21 depicts the scene of a cafe booth splattered with blood. Exhibit 27 is a picture of the wall near where the killing took place. It, too, was splattered with blood; and Exhibit 28 displayed a pool of blood on the floor where the decedent had fallen. Assuming arguendo that the exhibits complained of were of questionable materiality or relevance, we, nevertheless, do not find them gruesome; and it is our opinion that if they were erroneously admitted, in context they were, nevertheless, not inflammatory but undoubtedly harmless.

## ISSUE III

As the defendant and his wife, Betty Jo, drove to their home following his verbal confrontation with the deceased, he saw his brother, Rick, and Stanley Ricketts on the street and picked them up. Stanley was fifteen or sixteen years old and the son of his mother's consort, Leon Ricketts. Defendant and his wife and baby lived in the same house with his mother, Leon, Rick and Stanley. As they arrived home, all four got out of the automobile. The defendant went into the house, picked up a shotgun, returned to the automobile and said, "Come on." Rick and Stanley re-entered the automobile with the defendant, but Betty Jo went into the house and remained there. The defendant then drove to a house trailer at a nearby location; and while Rick and Stanley remained in the car, he went into the trailer and returned with shells for the gun.

From the trailer, the defendant accompanied by Rick and Stanley drove to a municipal parking lot near to and on the same side of the street as Herb's Rustic Tavern, where the verbal encounter with the deceased had occurred. The three alighted from the vehicle. Carrying the shotgun and with Rick following close behind, the defendant went directly to the tavern and entered. Stanley did not follow. Instead, he went across the street where Nancy Carlson was standing awaiting a ride. As he approached Nancy, he told her that there was going to be a shooting over at Herb's Bar and pointed to it. A few seconds later a shot was fired.

The defendant objected, upon hearsay grounds, to Nancy's testifying as to the statement of Stanley above related. The objection was overruled. The State supports the court's ruling upon the basis that the statement was a part of the *"res gestae."*

Of *res gestae,* the following has been written:

> "The phrase res gestae has long been not only entirely useless, but even positively harmful. It is useless, because every rule of evidence to which it has ever been applied exists as a part of some other well-established principle and can be explained in the terms of that principle. It is harmful, because by its ambiguity it invites the confusion of one rule with another and thus creates uncertainty as to the limitations of both. It ought therefore wholly to be repudiated as a vicious element in our legal phraseology. No rule of evidence can be created or applied by the mere muttering of a shibboleth. There are words enough to describe the rules of evidence. Even if there were no accepted name for one or another doctrine, any name would be preferable to an empty phrase so encouraging to looseness of thinking and uncertainty of decision." *Wigmore on Evidence,* Chadbourn 1976 Revision, § 1767, p. 255.

One of the well established principles referred to by Professor Chadbourn in the foregoing statement is the "spontaneous exclamation" or "excited utterance" exception to the hearsay rule.

"This general principle is based on the experience that, under certain external circumstances of physical shock, a

stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or at least as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts." *Wigmore on Evidence,* Chadbourn 1976 Revision, § 1747, p. 195.

Defendant argues that the spontaneous exclamation *"res gestae"* principle is not applicable in this case because, the utterance (1) was not made by the defendant, a participant in or a witness to the event, (2) was not made at the scene of the event and (3) was made prior to rather than contemporaneously with or immediately following the event. In this connection, he confuses the shooting, undoubtedly an exciting event, for the event that gave rise to the spontaneous exclamation. The event that produced the utterance, however, was not the shooting. Rather it was the preparation for the shooting. Stanley was present during such preparation. The preparation was transitory in nature, and there can be no serious contention but that the exclamation came within a time-frame evidencing that it was the product of the excitement rather than of deliberation.

The defendant also points out that Stanley's statement was offered to evidence his conclusion that the shooting was done with premeditation. We recognize that Stanley, had he been himself testifying, would not have been permitted to state his conclusion in the face of a proper objection. However, this is a matter entirely apart from the hearsay grounds of objection and was not interposed at the trial. A basis for objection to the admission of evidence different from that cited at the trial may not be urged on appeal. *Jones* v. *State,*

(1973) 260 Ind. 463, 296 N.E.2d 407; *McMinoway* v. *State,* (1973) 260 Ind. 241, 294 N.E.2d 803; *Tyler* v. *State, supra.*

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J., Arterburn, DeBruler and Hunter, JJ., concur.

NOTE.—Reported at 361 N.E.2d 150.