GEORGE HOOVER v. STATE OF INDIANA.

[No. 977S725.   Filed June 20, 1978.]

*Rodney H. Bayless,* of Merrillville, for appellant.

*Theodore L. Sendak,* Attorney General, *Kenneth R. Stamm,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged by indictment with first degree murder, and found guilty in a trial by jury of second degree murder, Ind. Code § 35-1-54-1 (Burns 1975). He was sentenced to imprisonment for not less than fifteen (15) nor more than twenty-five (25) years, and raises the following issues on appeal:

(1) The sufficiency of the evidence upon the elements of malice and absence of self-defense.

(2) The admission of certain photographs of the deceased, State's exhibits Nos. 9, 10, and 12, over objection by the defendant.

(3) The giving of Court's Instruction No. 9 upon the issue of provocation, over objection by the defendant.

(4) The refusal of defendant's Instructions Nos. 2 and 3 upon the issue of self-defense.

## ISSUE I

The defendant questions the sufficiency of the evidence to prove malice and to negate the claim of self-defense. In re-

viewing a question of sufficiency of the evidence this Court will look only to that evidence most favorable to the State along with all reasonable inferences to be drawn therefrom, in order to determine whether a reasonable trier of fact could have found the existence of each of the elements of the crime charged beyond a reasonable doubt. *Baum* v. *State,* (1976) 264 Ind. 421, 345 N.E.2d 831. We will neither reweigh the evidence nor judge the credibility of the witnesses in making this determination. *Robinson* v. *State,* (1977) 266 Ind. 604, 365 N.E.2d 1218.

The evidence as viewed in such a light indicates that the defendant, George Hoover, and the decedent, Robert Hannah, had been involved in a family quarrel concerning the divorce of the defendant's parents. According to the defendant, he had been accused by his mother's family, of which the decedent was a member, of taking his father's side in the quarrel.

State's witness, Barbara Dixon, testified that on August 17, 1976, she was visiting Mary Lou Hayes, George and Robert's aunt, in her first floor apartment. Her version of the events as they happened that day coincided for the most part with that related by Mary Lou Hayes, which was as follows:

On August 17, around 5:30 p.m., George and Robert were both present in the parking lot of the apartment building where Mary Lou Hayes lived. They had become involved in a heated argument, part of which Ms. Hayes overheard. As they were pushing and shoving each other, she heard Robert ask George why he was taking sides against the family and hurting his mother. George responded by saying that he was not taking sides. Conversation followed concerning some of Robert's possessions which he claimed were still in George's car. Robert went to the trunk of the car, took out a spray can and started to spray the car. At that point George went under the car and came up in a kneeling position with a gun in his hand. As he started to shoot, Robert jumped back. The shooting continued at which point Robert started to run toward the apartment building. George ran after him yelling, "You

think I'm playing with you. I'll kill you, you * * *." Robert got about four steps up the stairs when he slipped and fell into a sitting position. Ms. Dixon testified that at that point Robert seemed to flinch. George came to the side of the steps and Mrs. Hayes asked him to please let Robert go and not kill him. For a few minutes George stopped and looked first at Robert and then at his aunt. Then someone called his name. George pulled the trigger, aiming at Robert's head which was about a foot away, and fired. George then came around to the bottom of the steps and shot Robert again, stating "I told you I was going to kill you." Ms. Hayes made it very clear in her testimony that Robert was still standing on the curb when the first shots were fired. He headed for the apartment building only after the firing started.

The defendant also took the stand and related a very different version of the events as they happened that afternoon. He stated that Robert had threatened him several times and that he shot the decedent out of fear for his own life only after he saw him running toward the apartment presumably to get his shotgun. Based on all of these facts the defendant argues that he was sufficiently provoked by the decedent so as to negate any evidence of malice on his part, and that based upon the fear that he felt for his own life, he was justified in shooting Robert in self-defense.

It has frequently been stated by this Court that the element of malice can be inferred from the deliberate use of a deadly weapon in a manner likely to produce death. *Kerns* v. *State*, (1976) 265 Ind. 39, 349 N.E.2d 701, and cases cited therein. Although the defendant correctly contends that courts have held that "fear, adequately provoked, will reduce murder to manslaughter," thereby excluding the element of malice, *Dickens* v. *State*, (1973) 260 Ind. 284, 293, 295 N.E.2d 613, it remains for the jury to determine whether there has been a sufficient showing, from all of the facts presented, that the defendant's reason was obscured and that he was rendered incapable of cool reflection.

The testimony of Ms. Hayes and Ms. Dixon was sufficient evidence to support a finding that the defendant was not acting out of fear at the time in question. Their testimony indicates that Robert was unarmed, that he started to run only after the first shots were fired, and that George followed him to the stairs. At that point the defendant paused for a few minutes and appeared to listen to his aunt's pleas to spare Robert's life but then fired the final two shots at close range. Further, the defendant was heard to comment several times during this period that he was going to kill the decedent. Such evidence is a sufficient showing of malice to sustain the jury's finding on that element.

The defendant also contends that the State failed to negate his claim of self-defense. In support of his allegation he cites *Banks* v. *State,* (1971) 257 Ind. 530, 276 N.E.2d 155, wherein this Court set forth the necessary elements of self-defense as found in *King* v. *State,* (1968) 249 Ind. 699, 705, 234 N.E.2d 465 :

"Where one has taken the life of another human being, and thereafter contends that he did so in self-defense, he can only be successful in his contention if :
1.  he acted without fault,
2.  he was in a place where he had a right to be, and
3.  he was in real danger of death or great bodily harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm."

Although the burden rested with the State to negate the defense, the final determination as to whether this burden was met rested with the trier of fact. *Clark* v. *State,* (1976) 265 Ind. 161, 352 N.E.2d 762. In the instant case there was conflicting evidence introduce as to whether or not the defendant acted without fault. There was considerable doubt raised as well as to whether or not he was placed in fear of death or great bodily harm. Although there was testimony, elicited from the defendant and a friend of the defendant's, that the defendant had been threatened by the

decedent, the jury was not required to believe such testimony or the further testimony of the defendant, that he believed the decedent was going for his shotgun. Additionally, Ms. Hayes had previously testified that the decedent did not move until after the first shots were fired.

We find that the evidence was sufficient to convince a reasonable person, beyond a reasonable doubt, that the defendant shot the decedent purposely and maliciously and that in so doing, he was not acting in self-defense.

## ISSUE II

The defendant argues, on appeal, that State's exhibits 9, 10 and 12, which were photographs of the decedent taken at the scene of the crime shortly after his death, were inadmissible as unnecessary and inflammatory, citing *Poe* v. *Commonwealth, Ky.*, (1957) 301 S.W.2d 900, *Craft* v. *Commonwealth, Ky.*, (1950) 312 Ky. 700, 229 S.W.2d 465 and *Kiefer* v. *State*, (1961) 239 Ind. 103, 153 N.E.2d 899.

Although this Court has, upon a few occasions, reversed criminal convictions for admitting inflammatory and irrelevant photographs into evidence, *Kiefer* v. *State*, *supra*, and, in others, has been critical of admitting gruesome photographs where the relevancy was but slight and the tendency to inflame was great, *Carroll* v. *State*, (1975) 263 Ind. 696, 338 N.E.2d 264; *Bates* v. *State*, (1977) 267 Ind. 8, 366 N.E.2d 659, we have never followed a policy of dictating the State's tactical policy of prosecution. Rather, the rule is one of relevance. *Ferrier* v. *State*, (1977) 266 Ind. 117, 361 N.E.2d 150; *Feller* v. *State*, (1976) 264 Ind. 541, 348 N.E.2d 8.

We have examined the exhibits in question and find that they meet the standard of relevancy required. Further, we do not find them objectionable as unnecessarily gruesome and inflammatory.

## ISSUE III

At the close of all of the evidence the court gave the following instruction upon the issue of provocation:

"Mere passion or anger is not alone sufficient to make an intentional homicide voluntary manslaughter. The sudden heat of passion sufficient to reduce homicide from murder to manslaughter must be accompanied by adequate provocation. Mere words do not constitute provocation which will reduce an unlawul killing from murder to manslaughter."

On appeal the defendant objects to the giving of the above instruction upon the grounds that it is an incomplete statement of the law in this area. The defendant has waived review of this issue by his failure to include in his brief the verbatim objections made at trial, Ind. R.Ap.P. 8.3, and we decline to treat the issue other than to say that we find no merit in his claim. The instruction was an accurate statement of the law, and if the defendant desired to have it include other facets of the defense, it was incumbent upon him to tender an alternative instruction.

## ISSUE IV

The defendant tendered instructions Nos. 2 and 3 upon the issue of self-defense which were refused by the trial court. The court gave instruction No. 14 which was as follows:

"SELF DEFENSE: The Killing of another human being *may be justified* on the theory of Self Defense if the perpetrator: (Emphasis ours)

"1. Acted without fault.

"2. Was in a place where he had a right to be.

"3. Was in real danger of death or great bodily harm or in such apparent danger as caused him in good faith to fear death or great bodily harm.

"The danger of death or great bodily harm need not be actual. It need be only apparent to a reasonable person under the circumstances. The law protects persons who feel compelled to act at such times even though in retrospect it is proved they have erred if they acted reasonable in view of the surrounding circumstances under which the events

took place. The law of Self Defense does not, however, protect one who kills another human being through anger or revenge in an encounter provoked and brought on by himself.

"If you believe from the evidence in this case that the Defendant shot the decedent in self defense or if you have a reasonable doubt as to whether or not the Defendant shot the decedent in self defense, then he cannot be found guilty of any crime."

On appeal the defendant contends that the instruction given was an incorrect statement of the law because of the use of the words, "may be justified." In support of his contention he cites *Nuss* v. *State,* (1975) 164 Ind. App. 396, 328 N.E.2d 747, wherein the Court of Appeals held that the giving of an instruction which, among other errors, stated that killing in self-defense "may be excusable," was reversible error. Based upon the *Nuss* case the defendant argues that the trial court's instruction, which covered the subject matter of his tendered instruction No. 3 was erroneous and that it was, therefore, error to refuse said tendered instruction No. 3.

It is a well settled rule that an instruction may be properly refused if the subject matter is covered by other instructions given by the court. *Hash* v. *State,* (1972) 258 Ind. 692, 284 N.E.2d 770. Thus, although the defendant has waived any objections he may have had to the giving of instruction No. 14 in that he failed to object at trial, we will, nevertheless, focus our attention on the wording of said instruction.

The instruction found to be erroneous in *Nuss* v. *State, supra,* was as follows:

". . . When, *from the acts of his assailant* he believes and has reasonable ground to believe, that he is in danger of losing his life, or receiving great bodily harm from his adversary, the right to defend himself from such danger or apparent danger may be exercised by him, and he may use it to any extent which is reasonably necessary, and if his assailant is killed as the result, from the reasonable defense of himself, said killing *may be excusable.* The question of the existence of such danger at the time of the

killing, the necessity or apparent necessity for the use of the force employed by the defendant, as well as the amount of force necessary to resist an attack, can only be determined from the standpoint of the defendant, at the time and under all existing circumstances."

The objection noted by the Court of Appeals was that the words "may be excusable" in the context of that instruction, impliedly informed the jury that a killing in self-defense *may not always be excusable*. In the court's instruction No. 14, however, that inference could not reasonably be drawn. The instruction clearly stated, at the beginning that *killing may be justified* and proceeded to relate the conditions of justification, which conditions were those of a valid self-defense claim. It will be noted that the instruction ended with the statement that if the jury found the existence of self-defense or if it had a reasonable doubt as to its existence, "* * * then he *cannot* be found guilty of any crime." (Emphasis ours). Had the instruction ended with a statement that under the circumstances stated the jury "may find the defendant not guilty," the instruction would have been objectionable. However, in the context of this instruction, there was nothing objectionable in the introductory phrase.

We find no error. The judgment of the trial court is affirmed.

Givan, C.J., and DeBruler, Hunter and Pivarnik, JJ., concur.

NOTE.—Reported at 376 N.E.2d 1152.