Daniel Scott CORDER, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 483 S 143.

Supreme Court of Indiana.

Aug. 20, 1984.

Charles E. Enslen, Highland, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

Defendant, Daniel Scott Corder, was convicted by a jury of murder, Ind.Code § 35–42–1–1 (Burns 1979 Repl.), and of attempted murder, a Class A felony, Ind. Code § 35–41–5–1 (Burns 1979 Repl.). Defendant received consecutive terms of fifty-five and forty-five years. In this direct appeal, defendant raised ten issues, which we have combined into eight:

1. Whether the evidence was sufficient to support the convictions;

2. Whether the sentence imposed was cruel and unusual punishment;

3. Whether the trial court erred in denying a request by defendant's attorney to withdraw his appearance;

4. Whether the trial court erred in granting defendant's motion to withdraw his plea of insanity;

5. Whether the trial court erred in denying defendant's motion to sequester the jury;

6. Whether the trial court improperly admitted hearsay evidence;

7. Whether the trial court erred in admitting certain photographs; and

8. Whether the trial court erred in allowing statements made by defendant to a psychiatrist to be used for impeachment purposes.

A review of the facts most favorable to the state shows that on November 30, 1980, defendant spent the day with his parents, Daniel and Lois Corder, at their home in Merrillville. After dinner, Mrs. Corder fell asleep in a chair. As Mrs. Corder slept defendant came up behind her and struck her across the head with a baseball bat. Mrs. Corder ran from the house to her next door neighbors. The neighbors turned on an outdoor spotlight and noticed Mrs. Corder covered with blood and defendant coming toward her with a baseball bat. Defendant told the neighbors that the house

was on fire and then returned to the house. He later drove away in his automobile.

Mrs. Corder testified that as she ran from her house she noticed defendant and Mr. Corder fighting. One of the Corders' neighbors found Mr. Corder lying in the driveway. Mr. Corder told the neighbor that "Scott went crazy, beat us with a baseball bat." Moments later, Mr. Corder told the neighbor he had been shot in the stomach. Mr. Corder died shortly thereafter.

After leaving his parents' house defendant went to a friend in Chicago. The next day another friend told him he was wanted by the police in Indiana. Defendant surrendered voluntarily on December 3, 1980.

## I.

Defendant first argues that the evidence was insufficient to support the convictions for murder and attempted murder. We disagree.

Under our standard for reviewing questions involving the sufficiency of the evidence, we may neither weigh the evidence nor judge the credibility of witnesses. We must look at the evidence most favorable to the state along with all reasonable inferences drawn therefrom to determine whether there is substantial evidence of probative value to support the conclusion of the trier of fact. *Walker v. State*, (1982) Ind., 442 N.E.2d 696; *Fielden v. State*, (1982) Ind., 437 N.E.2d 986.

Defendant's contention regarding the murder conviction is that the evidence failed to show that he knowingly or intentionally killed his father. Defendant characterizes the evidence as circumstantial and points out that there was no direct evidence showing that he shot his father. While it is true that there was no direct evidence, a guilty verdict may be based solely on circumstantial evidence. *McAfee v. State*, (1984) Ind., 459 N.E.2d 1186; *Thompson v. State*, (1982) Ind., 441 N.E.2d 192. Circumstantial evidence is no different from other evidence for sufficiency purposes. *Collins v. State*, (1980) Ind., 413

N.E.2d 264. Here the evidence shows that defendant's mother, after being struck by defendant, saw defendant and his father fighting. A neighbor testified that he heard a gunshot and shortly thereafter found Mr. Corder seriously wounded. A semi-automatic rifle that defendant knew how to operate was found in the house and firearms experts testified that the bullet that killed Mr. Corder came from the gun. From the evidence produced at trial the jury could logically have inferred that defendant knowingly and intentionally shot his father.

Defendant also claims that the evidence was insufficient to support the conviction for attempted murder. Defendant admits that there was direct evidence showing that he struck his mother with a baseball bat but states that a baseball bat is not a deadly weapon *per se*. We have consistently held that whether an object is or is not a deadly weapon depends upon the manner in which it is used. *Lamb v. State*, (1984) Ind., 462 N.E.2d 1025; *Cummings v. State*, (1979) 270 Ind. 251, 384 N.E.2d 605; *Liston v. State*, (1969) 252 Ind. 502, 250 N.E.2d 739. Here, the bat was obviously being used in a manner calculated to cause great bodily injury and intent to kill may be inferred from the use of a deadly weapon in a way likely to cause death. *Johnson v. State*, (1980) 273 Ind. 1, 401 N.E.2d 674. The evidence was sufficient to show that defendant acted with the required degree of culpability. There was no error.

## II.

Defendant next contends that the sentence was so excessive that it constituted cruel and unusual punishment. Defendant asserts that the consecutive sentences of fifty-five and forty-five years were manifestly unreasonable and were the product of the trial judge's prejudice against defendant. Defendant further argues that as a result of this prejudice the trial judge ignored certain mitigating circumstances.

Under Ind.R.Ap.Rev.Sen. 2, we may revise a sentence authorized by stat-

ute only if the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. A sentence is not manifestly unreasonable unless no reasonable person could find such a sentence appropriate to the particular offense and offender. *Id.* Here the trial judge stated that he found only one mitigating circumstance, that being defendant's lack of criminal history. As aggravating circumstances the trial judge found that defendant was in need of correctional treatment, that the apparent motive for the crime was money, that the victims were defendant's parents, that the attack on defendant's mother was vicious and that the father was shot in the back. Defendant asserts that the judge failed to take into account defendant's age, his blackouts, the fact that he had been drinking, and that he voluntarily returned to Indiana. We first note that the failure to consider defendant's age was certainly not error, since defendant was twenty-four years old. Nor was the failure to consider the other factors as mitigating circumstances error. The sentence was clearly based upon the facts of the case and was within the parameters of the statute. And while the trial judge did at one point indicate his disgust of defendant, there is no evidence that the sentence was based on prejudice. In short, we do not find the sentence excessive. There was no error.

### III.

On August 17, 1981, defendant's public defender petitioned the court for permission to withdraw his appearance on the ground that a conflict of interest had developed. The motion did not specify what the conflict was, but instead stated that disclosure would have violated the attorney/client privilege. The trial judge denied the motion but referred the matter to another judge for an *in camera* hearing. The record does not disclose whether the *in camera* hearing was ever held. Defendant contends the trial judge erred in denying the motion to withdraw before referring the matter to another judge for an *in camera* hearing.

▇ The better course of action in this case may well have been for the trial judge to have held a hearing on the motion before denying it. Nevertheless, defendant has not demonstrated sufficient prejudice to require reversal. Defendant's attorney continued to represent defendant in an adequate manner, and defendant admits that his representation did not result in his trial being a mockery of justice. Defendant does raise instances where he claims his counsel was not adequately prepared, but they were not sufficient to require reversal. As defendant has not shown that the denial of the motion to withdraw jeopardized or prejudiced him, we cannot now reverse.

### IV.

Defendant next contends the trial court erred when it granted defendant's motion to withdraw his insanity plea without first making findings of facts and conclusions of law. Defendant asserts that such findings were necessary in order to assure that he was competent to make the request.

▇ Defendant acknowledges that the right to a competency hearing is not absolute, *Feggins v. State*, (1980) 272 Ind. 585, 400 N.E.2d 164, and that a hearing is necessary only when there is evidence before the trial court that creates a reasonable or bona fide doubt as to defendant's competency. *Feggins v. State; Cook v. State*, (1972) 258 Ind. 667, 284 N.E.2d 81. However, defendant believes there were sufficient indicators before the court to create a bona fide doubt as to his competency. These indicators included the fact that defendant originally claimed he could not remember the incident, the fact that the withdrawal of the insanity defense was a radical change in the trial strategy, and the fact that defendant's father, after he was shot, stated "Scott went crazy." We believe these facts do not justify the significance placed upon them by defendant. Prior to defendant's request to withdraw his insanity plea the court conducted a competency hearing and determined that defend-

ant was able to comprehend the proceedings and assist in his own defense. When the motion to withdraw the insanity defense was made, the trial judge asked defendant's attorney whether he had discussed with defendant the strategy of withdrawing the plea of insanity. Counsel stated they had discussed it. The trial judge then asked defendant if it was his wish to withdraw the plea. Defendant answered, "Yes, it is, Your Honor." We find no error.

## V.

Defendant next contends the trial court erred in denying defendant's motion to sequester the jury due to media coverage of the trial.

Sequestration of the jury is mandatory only when the defendant faces the potential sentence of death. *Cobb v. State,* (1980) Ind., 412 N.E.2d 728; *Vaughn v. State,* (1978) 269 Ind. 142, 378 N.E.2d 859. In this case the state did not seek the death sentence. Defendant nevertheless contends he faced a potential death sentence, since the state could have amended the information to include a request for the death sentence. The state did not, however, and defendant was not facing the death sentence. Therefore, sequestration was not mandatory.

Defendant makes the alternative argument that, even if we find there was no potential death sentence, there was still sufficient prejudice to require sequestration. Sequestering the jury in a non-death penalty case is a matter of trial court discretion. To demonstrate an abuse of this discretion the defendant must make some showing that the jury was exposed to trial publicity. *Sanders v. State,* (1981) Ind., 428 N.E.2d 23; *Roberts v. State,* (1978) 268 Ind. 127, 373 N.E.2d 1103. Defendant here has failed to establish sufficient prejudice. The record does not contain any articles or newscasts concerning the trial. The record does show that the media was present at the trial, but it does not show that the jury was exposed to publicity on the trial. Furthermore, the

trial court admonished the jury not to look at or consider any news coverage of the trial. The trial judge also questioned the jury to determine whether they had been exposed to media publicity. The jury indicated it had not. We find no error in denying the motion to sequester the jury.

## VI.

Defendant's father, after he was shot, was apparently able to make his way from the house to the driveway. After being discovered by neighbors, Mr. Corder stated "Scott went crazy, beat us with a baseball bat" and later "I'm shot." When a neighbor asked where Mr. Corder was shot he responded "Stomach." This neighbor testified that approximately ten minutes passed between the time he heard a gunshot and the time Mr. Corder spoke to him in the driveway. Over defendant's objections the neighbor testified about Mr. Corder's statements. Defendant contends that this evidence was hearsay and that it should have been excluded.

We find, however, that evidence concerning Mr. Corder's statements falls squarely within the excited utterances exception to the hearsay rule. There are two basic requirements that must be established before the exception applies. First, there must be a startling or exciting event that renders reflective thought inoperative. Second, the statement must be the spontaneous result of the event and not the result of reflective thought. *Ferrier v. State,* (1977) 266 Ind. 117, 361 N.E.2d 150; *McCormick, Evidence,* § 297 (2d ed. 1972). Whether a statement is admissible as an excited utterance is a matter within the discretion of the trial judge. *Walker v. State,* (1976) 265 Ind. 8, 349 N.E.2d 161. Here, Mr. Corder's statements were the result of an extremely traumatic event and they were not the result of reflective thought. While the statement "Scott went crazy" could be considered an opinion, this does not mean that the statements as a whole could not be admitted. A victim suffering from such a traumatic event can

hardly be expected to separate statements of fact from statements containing opinions. The trial judge did not err in allowing the statements to be admitted.

## VII.

Defendant next contends the trial court erred in admitting state's exhibits 12, 13, 15, and 16, all of which were photographs. Defendant claims that the state failed to establish an adequate foundation for the admission of these exhibits.

 The admission of photographic evidence is generally within the discretion of the trial court, reviewable only if the trial judge exceeds his discretion. *Sills v. State*, (1984) Ind., 463 N.E.2d 228; *Wilson v. State*, (1978) 268 Ind. 112, 374 N.E.2d 45. To be admitted into evidence it must be established that the photographs are a true and accurate representation of the things they are intended to portray. *Bray v. State*, (1982) Ind., 430 N.E.2d 1162; *Chambers v. State*, (1979) 271 Ind. 357, 392 N.E.2d 1156. The four photographs in question here all depicted the interior of the Corder home and showed blood on the walls and furniture. Mrs. Corder testified that the blood was hers and that she got blood on the walls and furniture as she was attempting to flee from defendant. Defendant contends that Mrs. Corder could not truly state that the pictures were true and accurate depictions of the house after the incident, because Mrs. Corder's vision at the time was impaired due to blood in her eyes. But Mrs. Corder did testify that the pictures were true and accurate, and her testimony established when and how the blood got on the walls and furniture. In addition to Mrs. Corder's testimony, two other witnesses identified the photographs and stated that they were true and accurate. One of the two was the photographer who took the pictures. We find no error.

## VIII.

Defendant lastly contends that the trial court erred in allowing the state to admit statements defendant made to the court-appointed psychiatrists. These statements were introduced for the purpose of impeaching defendant by prior inconsistent statements. Defendant claims the admission of the statements violated the physician/client privilege and the Fifth Amendment guarantee against self-incrimination.

 We first note that defendant did not raise the physician/client privilege issue in his motion to correct errors. Therefore the issue is waived. Even were there no waiver, the privilege does not apply to the facts of this case. The physician/client privilege applies only to those communications necessary to treatment or to diagnosis looking toward treatment. *Collins v. Bair*, (1971) 256 Ind. 230, 268 N.E.2d 95. The physician in this case was appointed by the court for the purpose of making a mental examination of defendant. The purpose of the examination was to determine whether the insanity defense applied to the case; the physician was not treating defendant. Thus, no privilege existed.

 We also find no violation of the Fifth Amendment. The Fifth Amendment, as well as Art. 1, § 14 of the Indiana Constitution, provides that persons shall be free from being *compelled* to make disclosures that might subject them to criminal prosecution or that might aid in convicting them. Defendant here was not compelled to testify in any way. Defendant originally filed a plea of insanity. Once he did so, defendant "accepted the fact that he would be then subject to psychiatric examination and evaluation for the purpose of generating evidence admissible in the oncoming trial and useful to the prosecution in defeating his position." *Mahaffey v. State*, (1984) Ind., 459 N.E.2d 380, 382. As in *Mahaffey*, defendant here apparently participated fully and freely in the examination. We find no error.

For all of the foregoing reasons, there was no trial court error, and the judgment of the trial court should be affirmed.

Affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.