**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 28 2014, 9:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JANE H. CONLEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEVIN A. DEUBNER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1309-CR-439 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
The Honorable Anne M. Flannelly, Commissioner
Cause No. 49G04-1302-FD-11821

**May 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Kevin A. Deubner appeals the revocation of his placement in a community corrections program ("Community Corrections"), contending that it was error for the trial court to admit an out-of-court statement of the alleged victim under the "excited utterance" exception to the hearsay rule.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On March 28, 2013, as part of a combined plea agreement, Deubner pleaded guilty to theft,[1] a Class D felony ("Cause No. 11821"), and auto theft,[2] a Class D felony ("Cause No. 84623"). He was sentenced to 545 days for the theft conviction and 365 days for the auto theft conviction, to be served consecutively in Community Corrections.

On April 30, 2013, Indianapolis Metropolitan Police Department ("IMPD") officers were called to South Sheffield Avenue in Indianapolis on a report of individuals fighting. IMPD Officers Eric Stevenson and David Smiley were the first to arrive. About "a minute" later, Officer Monica Hodge joined them at the scene. *Tr*. at 20. Upon arriving, the officers found a distraught woman in the street, who was speaking too quickly for the officers to understand her. *Id*. at 34. Officer Hodge observed that the woman's face was red, she had blood on her shirt and cuts on her fingertips, and she was crying and pacing back and forth. *Id*. at 19.

From previous interactions, Officer Hodge knew the woman was Amber. *Tr*. at 16. Amber told the officers that her boyfriend, Deubner, had hit her and that she was pregnant.

---

[1] *See* Ind. Code § 35-43-4-2.

[2] *See* Ind. Code § 35-43-4-2.5.

2

Amber pointed to the house where Deubner lived. Officers walked to the front door of the house and knocked. Deubner answered the door and immediately claimed that he had not hurt Amber but merely grabbed her to try and calm her down after she fell on the ground. Officer Stevenson handcuffed Deubner and read him his *Miranda* rights.

Deubner, who was at that time on Community Corrections for the theft and auto theft convictions, was charged under cause No. 49-G04-1305-MC-28297 ("Cause No. 28297") with the following offenses against Amber: battery, a Class D felony; domestic battery, a Class D felony; strangulation, a Class D felony; criminal confinement, a Class C felony; and intimidation, a Class C felony. On May 2, 2013, Deubner was notified of a Community Corrections violation in Cause No. 11821 for having been arrested and charged under Cause No. 28297. *Appellant's App.* at 33.

Cause No. 28297 and the Community Corrections violation were set for jury trial on August 15, 2013. On that date, however, the State was not ready for trial and dismissed all charges in Cause No. 28297 without prejudice. With regard to the Community Corrections violation, the State offered Deubner a "no recommendation" plea if he would admit to violating the rules governing his Community Corrections; Deubner declined the State's offer. The State also offered not to oppose Deubner's continuance in Community Corrections if he would admit having violated the rules; again, Deubner refused.

The trial court held a hearing on the Community Corrections violation, and Officers Hodge and Stevenson testified. Officer Hodge's testimony included a reference to Amber's out-of-court statements that "she was hit by her boyfriend" and "she was pregnant." *Tr.* at 22. Amber was not in court, and Deubner objected on the grounds that

3

the statements were hearsay and did not fall within the excited utterance exception to the rule because "there was a period of time between any alleged incident and when this statement was made." *Tr*. at 21. Over Deubner's objection, Amber's statements were admitted.

Officer Hodge testified that when Deubner answered his door, he immediately began talking.

> [Deubner] said that he didn't hurt his girlfriend, that she's the one that came over and wanted to talk to him, she came in his house, or he let her in the house, she was screaming at him, he wanted her to calm down so he kind of grabbed her, gave her a hug to calm her down and she continued to scream and then she fell to the ground.

*Id*. at 24. After Deubner was placed in handcuffs and read his *Miranda* rights, Amber started walking down the street where Deubner could see her. *Id*. at 25. Deubner became agitated and yelled at Amber to tell the police not to arrest him. *Id*. at 26. Officer Stevenson and Officer Hodge both testified, without objection, that Deubner said that Amber wanted him arrested because that would allow her to come and take his possessions out of his house. *Id*. at 29, 41. The trial court revoked Deubner's placement in Community Corrections and proceeded to sentencing.

After calculating his credit time, the court sentenced Deubner to the Department of Correction ("DOC"), but finding that his credit time made this time served, the trial court ordered him released. The State agreed with the sentence and calculation of time. Four days later, on August 19, 2013, the trial court called Deubner back and said his credit time had been calculated incorrectly. The trial court ordered him to serve a revised sentence of

4

303 days, "which actual time is 151 and a half actual days," in the DOC. *Id*. at 66. Deubner now appeals.[3] Additional facts will be added where necessary.

## DISCUSSION AND DECISION

Deubner argues that the trial court abused its discretion when it revoked his placement in Community Corrections and ordered the remainder of his sentence be served in the DOC. "[T]here is no right to probation: the trial court has discretion whether to grant it, under what conditions, and whether to revoke it if conditions are violated." *Reyes v. State,* 868 N.E.2d 438, 440 (Ind. 2007). "A reviewing court treats a petition to revoke a placement in a community corrections program the same as a petition to revoke probation."[4] *Bass v. State,* 974 N.E.2d 482, 488 (Ind. Ct. App. 2012). The burden of proof in probation revocation proceedings is upon the State to prove the violation of a condition of probation by a preponderance of the evidence. *Jaynes v. State*, 437 N.E.2d 137, 139 (Ind. Ct. App. 1982). Criminal conduct is always a violation of probation. *Gardner v. State*, 678 N.E.2d 398, 401 (Ind. Ct. App. 1997). However, the State is not required to prove conviction of another crime. *Jaynes*, 437 N.E.2d at 139. Rather, it is sufficient, for probation revocation purposes, if the trial judge, after a hearing, finds that unlawful conduct occurred. *Id*. at 139-40.

---

[3] The record before us contains no information regarding Deubner's release date from the DOC. Noting that he received a 303-day sentence, with good behavior, Deubner may have been released prior to this opinion.

[4] Because a petition to revoke placement in a community corrections program is treated the same as a petition to revoke probation, for ease of reference, we will also refer to the instant action as a probation revocation proceeding.

5

Probation revocation is a two-step process. *Cox v. State*, 850 N.E.2d 485, 488 (Ind. Ct. App. 2006). First, the court must make a factual determination that a violation of a condition of probation actually has occurred. *Id.* If a violation is proven, then the trial court must determine if the violation warrants revocation of the probation. *Id.* In making the determination of whether the violation warrants revocation, the probationer must be given an opportunity to present evidence that explains and mitigates his violation. *Id.*

Deubner insists that it was error for the trial court to admit Amber's out-of-court statements under the excited utterance exception to the rule excluding hearsay. Specifically, he asserts that admitting Amber's statement violated his right to confront Amber. *Appellant's Br*. at 4.

Our court recently explained that a probation revocation hearing is not equivalent to an adversarial criminal proceeding. *Cox v. State,* 706 N.E.2d 547, 550 (Ind. 1999).

> Because probation revocation procedures "are to be flexible, strict rules of evidence do not apply." *Id.* The scope of the right to confrontation as defined in *Crawford v. Washington,* 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed.2d 177 (2004), does not apply in such proceedings. *Reyes*[, 868 N.E.2d at 440 n.1]. In *Cox,* the Court held that judges could consider hearsay "bearing some substantial indicia of reliability," but declined to adopt a particular approach to determining that reliability. 706 N.E.2d at 551. Subsequently, in *Reyes,* the Indiana Supreme Court adopted a "substantial trustworthiness" test. [868 N.E.2d at 440].

*Wann v. State*, 997 N.E.2d 1103, 1105 (Ind. Ct. App. 2013). In reaching its decision, the Supreme Court observed that hearsay evidence may not be admitted "willy-nilly." *Reyes*, 868 N.E.2d at 440. Instead, the trial court "must evaluate the reliability of the hearsay evidence and, ideally, the trial court should explain on the record why the hearsay is reliable

6

and why that reliability is substantial enough to supply good cause for not producing live witnesses." *Id.* at 442.

An excited utterance, as an exception to the hearsay rule under Indiana Evidence Rule 803(2), is admissible even if the declarant is available as a witness. *Jones v. State*, 800 N.E.2d 624, 627 (Ind. Ct. App. 2003). "In order for a hearsay statement to be admitted as an excited utterance, three elements must be present: (1) a startling event has occurred; (2) a statement was made by a declarant while under the stress of excitement caused by the event; and (3) the statement relates to the event." *Id*. (citing Ind. Evidence Rule 803(2)). "This is not a mechanical test; admissibility turns on whether the statement was inherently reliable because the witness was under the stress of the event and unlikely to make deliberate falsifications." *Id*. (citing *Jenkins v. State,* 725 N.E.2d 66, 68 (Ind. 2000)). The heart of the inquiry is whether the declarant was incapable of thoughtful reflection. *Marcum v. State,* 772 N.E.2d 998, 1001 (Ind. Ct. App. 2002). Additionally, while a statement is generally less likely to be admitted as an excited utterance if it is made long after the startling event, the amount of time that has passed is not dispositive. *Jones*, 800 N.E.2d at 627 (citing *Holmes v. State,*[5] 480 N.E.2d 916, 918 (Ind. 1985) (upholding trial court's determination that statement was excited utterance even though time frame for statement was not clear from record).

The evidence regarding the violation of Community Corrections was heard during Deubner's probation revocation hearing. Officers Hodge and Stevenson testified that they

---

[5] *Holmes v. State,* 480 N.E.2d 916, 918 (Ind. 1985) was decided prior to the adoption of the Indiana Rules of Evidence.

arrived at the scene in response to a call to IMPD dispatch on a report of individuals fighting. At the scene, the officers found a distraught woman in the street who was speaking too quickly for the officers to understand her. Officer Hodge, who recognized the woman as Amber, observed that Amber's face was red, she had blood on her shirt and cuts on her fingertips, and she was crying and pacing back and forth. Amber said that Deubner had hit her and that she was pregnant. While there was no evidence regarding when the altercation occurred, the officers arrived about one minute after dispatch received the 911 call. From Amber's reaction, it was reasonable for the trial court to believe that Amber was incapable of thoughtful reflection and that her statement that Deubner hit her satisfied the substantial trustworthiness test. *See Wann*, 997 N.E.2d at 1105. The trial court did not abuse its discretion in admitting Amber's out-of-court statement.

While not explicitly argued, we must also address whether the trial court abused its discretion in finding sufficient evidence to support the revocation of Deubner's placement in Community Corrections. *Cox*, 850 N.E.2d at 488. During the probation revocation hearing, the trial court heard a version of the events from both sides. Testimony revealed that officers arrived on the scene to find Amber red faced, unable to be consoled, standing in the street with blood on her shirt and cuts on her fingertips. *Tr*. at 19. Amber told officers that Deubner hit her. *Id*. at 22. Testimony also revealed that Deubner did not deny touching Amber; instead, he admitted that Amber came to his house screaming, "[H]e kind of grabbed her, gave her a hug to calm her down and . . . then she fell on the ground." *Id*. at 24. Deubner told officers that Amber wanted him to violate his probation and go to jail so that she could take items from his house. *Id*. at 29, 41.

At the close of the probation revocation hearing, the trial court stated:

> Evidence and arguments heard and concluded and the court notes that Officer Hodge testified that when she arrived at the scene, she arrived within a few minutes of dispatch, she saw two officers on the scene, she recognized the female on that date, . . . she knew the female and she personally observed her to be crying, face red, pacing back and forth, talking quickly, blood on her fingertips and shirt and that she was upset. She had said she was hit by her boyfriend, she identified who her boyfriend was, she identified she was pregnant and the officer testified she did observe injury to Amber . . . and the court also notes that Officer Stevenson arrived almost simultaneously as Officer David Smiley was there. . . . He tried to calm her down, she was crying, upset, talking quickly and that she identified her boyfriend. He noticed blood on the shirt and she had reported a crime. And based on all of the evidence that's been presented today, the court finds that the State has presented proof by a preponderance of the evidence that the defendant committed battery, a felony battery on pregnant Amber . . . on April 30, 2013.

*Id*. at 47-48. The State had the burden of proving the violation of a condition of probation by a preponderance of the evidence. *Jaynes*, 437 N.E.2d at 139. Criminal conduct is always a violation of probation. *Gardner*, 678 N.E.2d at 401. As the finder of fact, the trial court had to weigh the evidence and determine whether to believe Amber or Deubner. It was well within the trial court's discretion to find by a preponderance of the evidence that Deubner had committed battery and, therefore, violated his placement in Community Corrections. The trial court did not abuse its discretion when it placed Deubner in the DOC after finding that he had violated a term of Community Corrections.

Affirmed.

MAY, J., and BAILEY, J., concur.